UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                                      :
ROBIN KIRK,                                           :
                                                      :   CASE NO. 1:09-cv-1405
            Plaintiff,                                :
                                                      :
vs.                                                   :   OPINION & ORDER
                                                      :   [Resolving Doc. No. 70.]
SHAW ENVIRONMENTAL, INC., *et al.,*                   :
                                                      :
            Defendants.                               :
                                                      :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this wrongful termination case, Defendants Shaw Environmental, Inc. and The Shaw Group, Inc. (collectively, "Shaw") move this Court for a Protective Order to prevent the deposition of James Bernhard, Jr., the CEO and Chairman of The Shaw Group. [Doc. 70.] Plaintiff Kirk opposes Shaw's motion. [Doc. 81.] Shaw has replied. [Doc. 82.]

For the following reasons, the Court **DENIES** Shaw's motion for a protective order to prevent the deposition, but **ORDERS** that the deposition take place in Baton Rouge, Louisiana and last no longer than ninety minutes.

**I. Background & Procedural History**

Plaintiff Robin Kirk brings this suit against, *inter alia*, his former employer, Shaw Environmental, Inc. and its parent company, The Shaw Group, Inc., both Louisiana Corporations headquartered in Baton Rouge. Kirk claims that Shaw wrongfully terminated him in violation of

-1-

Case No. 1:09-cv-1405
Gwin, J.

public policy due to his reporting potential violations of the Foreign Corrupt Practices Act ("FCPA") and took adverse employment actions against him based upon a perceived disability. [Doc. 35 at 14-17.] Kirk further claims that Defendant The Shaw Group and Defendants F. Steven Medeiros, Shaw Arabia Limited ("Shaw Arabia"), and Projects International Equities, LLC ("Projects International") tortiously interfered with his employment relationship with Shaw Environmental. [*Id.* at 16.]

Plaintiff Kirk worked for Defendant Shaw Environmental from 2001[1] until Shaw terminated him in June 2008. [*Id.* at 1.] In March 2005, the Plaintiff began working on a project that ultimately resulted in the formation of Defendant Shaw Arabia. [*Id.* at 2.] Shaw Arabia is a joint venture between three entities: Shaw Environmental, Inc. International ("SEI International"), a subsidiary of Defendant The Shaw Group; non-party Pan Environmental Services Co. Ltd. ("Pan ESC"), a Saudi Arabian company represented in the Shaw Arabia venture by Defendant Medeiros; and Defendant Projects International, a Delaware Corporation.[2] [*Id.* at 3-4.] Throughout Plaintiff Kirk's involvement in the Shaw Arabia venture, non-party General Mike DeLong, then a Shaw employee, served as a supervisor to Kirk. [*Id.* at 6; Doc. 70–8, Kirk Dep. at 113-15.]

In preparation for his travel to Saudi Arabia, Plaintiff Kirk underwent medical testing in late 2005. [Doc. 70-8, Kirk Dep. at 73.] As a result of this testing, Kirk ultimately learned he had chronic lymphocytic leukemia. [*Id.* at 73-76.] Kirk was nonetheless cleared for foreign assignment. [*Id.* at 79.] On May 27, 2006, Plaintiff Kirk relocated to Riyadh, Saudi Arabia, and in September 2006, Kirk became the General Manager of Shaw Arabia. [*Id.* at 91-92, 108-111; Doc. 35 at 7.]

---

[1] Kirk actually began his employment in 2001 with corporate entity that Shaw later acquired. [Doc. 70-7, Kirk Dep. at 26-30.]

[2] The parties dispute whether Medeiros also represented Projects International in the Joint Venture. [*See* Doc. 35 at 4; Doc. 70-8, Kirk Dep. at 81-84; Doc. 73 at 4.]

Case No. 1:09-cv-1405
Gwin, J.

Plaintiff Kirk worked to prepare proposals on behalf of Shaw Arabia for the Saudi Arabian Presidency of Meteorology and Environment ("the PME"), a Saudi government agency headed by Prince Turki Bin Nasser Bin Abdulaziz ("Prince Turki"), a member of the Saudi Royal family. [Doc. 35 at 5.] Prince Turki was responsible for deciding to whom to award PME contracts. [*Id.*] Plaintiff Kirk alleges that in approximately the summer or fall of 2007 Defendant Medeiros informed him that Prince Turki was an investor in Shaw Arabia. [*Id.* at 8; Doc. 70-8, Kirk Dep. at 121-23.] Plaintiff Kirk alleges he informed his supervisor at the time, Al Husak, of Prince Turki's financial interest in Shaw Arabia. [Doc. 35 at 8; Doc. 70-8, Kirk Dep. at 142-144.] Kirk says that he later told Malcolm Jarrell, who replaced Husak as his direct supervisor in November 2007, that Prince Turki was an investor in the joint venture. [Doc. 70-8, Kirk Dep. at 115-16; Doc. 70-9, Kirk Dep. at 152-53.] The Plaintiff alleges that DeLong also reported Prince Turki's investment in the joint venture to Shaw executives. [Doc. 81 at 5; *see also* Doc. 81-6, Email Correspondence between Mike DeLong and Abe Fatemizadeh, February 27-28, 2007 (indicating that "There are investors in Shaw Arabia .... major Princes ...."); Doc. 70-9, Kirk Dep. at 170-73 (plaintiff states that Jarrell told him that DeLong "was speaking openly about Prince Turki's ownership in the [Shaw Arabia] venture").]

In the summer of 2007, Shaw executives became concerned about the profitability of the Shaw Arabia venture. [Doc. 81-1, Thompson Dep. at 20, 33.] In approximately July 2007, Patrick Thompson, then-Chief Operating Officer of Shaw Environmental & Infrastructure, Inc. ("Shaw E&I") met with Kirk and DeLong to review Shaw Arabia's financials. [*Id.*] While Thompson was inclined to immediately shut down Shaw Arabia, after discussing the situation with Ron Oakley, then-President of Shaw E&I, and George Bevan, then-Executive Vice President of Shaw E&I, they collectively decided to continue the venture and review it again in six months. [*Id.* at 33-35.]

Case No. 1:09-cv-1405
Gwin, J.

On December, 12, 2007 Plaintiff Kirk returned to the United States for vacation. [Doc. 35 at 11.] Kirk says that upon his arrival, DeLong informed him that he was no longer the General Manager of Shaw Arabia. [*Id.*] Kirk did not return to Saudi Arabia. He did, however, continue to work on Shaw Arabia projects from the United States. [Doc. 70-10, Kirk Dep. at 218-19.] Plaintiff Kirk alleges that on or about December 17, 2007, he spoke with DeLong, Oakley, Bevan, and Thompson about his termination from Shaw Arabia. [Doc. 35 at 12.] The Plaintiff claims that during this call, DeLong indicated that the Saudi Arabian partner wanted Kirk removed and the Shaw executives decided that Bevan and Jarrell would travel to Saudi Arabia. [*Id.*]

From January 12-17, 2008, Bevan, Jarrell, DeLong, and other Shaw E&I employees traveled to Saudi Arabia to gather information to determine whether Shaw should go forward as a partner in the Shaw Arabia joint venture. [Doc. 81-2, Bevan Dep. at 22-23; Doc. 81-4, Trip Report - Riyadh, Saudi Arabia, January 12-17, 2008.] Part of the itinerary for the trip was a meeting with Prince Turki. [Doc. 81-4, Trip Report, *supra*, at 1.] The Plaintiff alleges that Jarrell told him that Bevan had a closed-door meeting with Prince Turki during the trip. [Doc. 70-10, Kirk Dep. at 217-18.] A briefing on the Shaw Arabia venture was apparently scheduled for Bernhard and Oakley on January 21, 2008. [Doc. 81-5, Email Correspondence between Diane Morgan, Steve Courtnage, and Michael Dillman, January 21, 2008, 4:46 p.m.] As a result of the trip, Shaw decided to continue its partnership in Shaw Arabia, despite Thompson's recommendation to the contrary, and named Bevan, Jarrell, and DeLong to the Board of Directors. [*Id.*]

From the time of his return to the United States in December 2007 until March 2008, Kirk worked on various Shaw proposals, but was not part of a permanent project team. [Doc. 70-10, Kirk Dep. at 151, 218-220.] Plaintiff Kirk alleges that in March 2008, Harry Dravecky, District Manager

-4-

Case No. 1:09-cv-1405
Gwin, J.

for Shaw E&I's Mid-Atlantic division, contacted him regarding a potential job opportunity with his team. [Doc. 35 at 13; Doc. 70-9, Kirk Dep. at 177-80.] Kirk alleges that he attempted to accept the offered position, but that Jarrell subsequently informed him that The Shaw Group had no jobs available anywhere in the organization for Kirk, and that Shaw would be terminating his employment. [Doc. 35 at 14; Doc. 70-9, Kirk Dep. at 174-75.] Kirk requested a furlough due to his medical condition, and on March 18, 2008 Shaw placed Kirk on a ninety-day unpaid furlough. [Doc. 35 at 14; Doc. 70-9, Kirk Dep. at 181-82; Doc. 70-10, Kirk Dep. at 228-231.] On June 16, 2008, the plaintiff was terminated. [Doc. 35 at 14; Doc. 16 at 8.]

In May 2009, Plaintiff Kirk brought the instant lawsuit against the Shaw Defendants in the Cuyahoga County Court of Common Pleas. [Doc. 1-1.] The Defendants removed the case to this Court on June 19, 2009. [Doc. 1.] In his Complaint, Kirk alleges that Shaw wrongfully terminated him in violation of public policy due to his reporting potential violations of the Foreign Corrupt Practices Act ("FCPA") and that The Shaw Group tortiously interfered with his employment relationship with Shaw Environmental. [Doc. 1-1 at 14-17.] On October 14, 2009, Plaintiff Kirk amended his Complaint, adding claims that Shaw discriminated against him based on a perceived disability, his chronic lymphocytic leukemia, and joining Defendants Medeiros, Shaw Arabia, and Projects International, who Kirk alleges tortiously interfered with his employment relationship with Shaw.

The Court held a status conference on December 7, 2009. At the status conference, the parties addressed several discovery issues, including the dispute over Bernhard's deposition. Based upon the representations of counsel, the Court at that time indicated that the Plaintiff should be permitted to depose Bernhard, but that some limits on the deposition's scope would be proper. The

Case No. 1:09-cv-1405
Gwin, J.

Plaintiff again raised the issue of Bernhard's deposition in a letter dated January 14, 2010. [Doc. 67.] In a reply letter dated January 19, 2010, the Defendants indicated their intent to file a motion for a protective order to prevent Bernhard's deposition. [Doc. 71.]

The Shaw Defendants filed the instant motion for an expedited protected order on January 19, 2010. [Doc. 70.] In support of their motion, the Defendants argue that Bernhard does not possess relevant information and that the Plaintiff's deposing Bernhard would impose an undue burden on Bernhard and Shaw. [Doc. 70-1.] The Plaintiff opposes the motion for a protective order. [Doc. 81.] The Defendants filed their reply on February 1, 2010. [Doc. 82.]

## II. Legal Standard

Parties may obtain discovery regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action. Fed R. Civ. P. 26(b)(1). Rule 26(b)(1) of the Federal Rules of Civil Procedure explains that "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

The Sixth Circuit has noted that a "discovery request is generally unobjectionable 'if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.'" *Marshall v. Bramer,* 828 F.2d 355, 358 (6th Cir. 1987)(quoting Fed. R. Civ. P. 26(b)(1)). Rule 26 is to be liberally construed to permit broad discovery. *See U.S. v. Leggett & Platt, Inc.,* 542 F.2d 655, 657 (6th Cir. 1976) (commenting that the "Federal Rules of Civil Procedure authorize 'extremely broad' discovery").

The Federal Rules of Civil Procedure vest a trial court with the authority to "make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." upon a showing of good cause. Fed. R. Civ. P. 26(c). A trial court

Case No. 1:09-cv-1405
Gwin, J.

can, in its sound discretion, grant a motion for a protective order. *Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 227 (6th Cir. 1996). Rule 26(b)(2)(C) further provides that a court "must limit the frequency or extent of discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, . . . or the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(2)(C).

In deciding whether to grant a protective order, a district court must balance the parties' competing interests and compare the hardships of granting or denying the request. *York v. Am. Med. Sys., Inc.*, No. 97-4306, 1998 WL 863790, at *4 (6th Cir. Nov. 23, 1998). The movant bears the burden of demonstrating that the balancing of hardships weighs in its favor. *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001).

### III. Analysis

Plaintiff Kirk alleges that Shaw terminated him because he reported Prince Turki's financial interest in Shaw Arabia to his supervisors. The extent and timing of Shaw executives' knowledge of Prince Turki's alleged conflict of interest are thus relevant to the Plaintiff's claims. While the Court is troubled that the evidence before it does not support Plaintiff's counsel's assertions that DeLong directly communicated his and Kirk's suspicions regarding Prince Turki to Bernhard, *see* Doc. 70-5, Email from David Neel to Leslie Ehret (Nov. 12, 2009, 3:33 p.m.), the Court nonetheless finds that the evidence does establish a time line of activity that suggests that Bernhard could have knowledge relating to Shaw Arabia and was in a position to make a decision about Shaw Arabia's future.

Case No. 1:09-cv-1405
Gwin, J.

The email that the Plaintiff cites suggests that Shaw executives briefed Bernhard on Shaw Arabia immediately following Bevan, Jarrell, and DeLong's January 2008 trip, during which they apparently met with Prince Turki. *See* Doc. 81-6, Morgan Email Correspondence, *supra*; Doc. 81-4, Trip Report, *supra*. Although Bevan denies and Jarrell does not recall such a briefing ever taking place, *see* Doc. 82-4, Bevan Dep. at 93, Doc. 82-3, Jarrell Dep. at 177, in light of the differing recommendations of Thompson on the one hand, and Bevan, Jarrell, DeLong, and Oakley on the other, it seems likely that Bernhard may have been the ultimate decision maker with respect to whether to continue the Shaw Arabia venture. *See also* Doc. 82-2, Morgan Dep. at 76 (expressing her opinion that Bernhard or Oakley would have made decision at that time as to whether Shaw would go forward with Shaw Arabia joint venture). Furthermore, given the direct reporting relationship and friendship between Bevan and Bernhard, *see* Doc. 81-2, Bevan Dep. at 21, Bevan likely relayed some information to Bernhard about his January 2008 trip to Saudi Arabia. The Court therefore finds that it is likely that Bernhard possesses relevant information.

Because Rule 26 authorizes "extremely broad" discovery of relevant, unprivileged information, *see* Leggett, 542 F.2d at 657, the Court in its discretion **DENIES** Shaw's motion for a protective order to prevent the Plaintiff from deposing Bernhard.

The Court recognizes the competing directive of Rule 26 that the Court should limit discovery when necessary to prevent unreasonable burdens on the disclosing party. *See* Fed. R. Civ. P. 26(b)(2)(C). The Court therefore **ORDERS** that the Plaintiff depose Bernhard in Baton Rouge, Louisiana and that the deposition be limited to ninety minutes.[3] The Court takes notice of the fact that Bernhard has recently undergone surgery, *see* Doc. 82 at 4, and directs the parties to find a

---

[3] The Court notes that it may also be possible for the Plaintiff to depose Bernhard via videoconference, as suggested in the Defendants' January 19, 2010 letter. [*See* Doc. 71 at 2.]

Case No. 1:09-cv-1405
Gwin, J.

mutually agreeable time for the deposition within the next weeks. However, the Court **ORDERS** the Defendants to produce Bernhard no later than February 19, 2010, one week before the Plaintiff must file his opposition to any dispositive motion.

### IV. Conclusion

For the foregoing reasons, this Court **DENIES** the Defendants' motion for a protective order, but **ORDERS** that the Plaintiff must depose Bernhard in Baton Rouge, Louisiana, and that the deposition shall last no longer than ninety minutes.

IT IS SO ORDERED.


Dated: February 3, 2010           s/      *James S. Gwin*
                                  JAMES S. GWIN
                                  UNITED STATES DISTRICT JUDGE