UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
------------------------------------------------------

| | : | |
|---|---|---|
| ROBIN KIRK, | : | |
| | : | CASE NO. 1:09-cv-1405 |
| Plaintiff, | : | |
| | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Doc. No. 49.] |
| SHAW ENVIRONMENTAL, INC., *et al.,* | : | |
| | : | |
| Defendants. | : | |
| | : | |

------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this wrongful termination case, Defendants Shaw Environmental, Inc. and The Shaw Group, Inc. (collectively, "Shaw") move this Court to transfer the case to the United States District Court for the Middle District of Louisiana, pursuant to 28 U.S.C. § 1404(a). [Doc. 49.] Plaintiff Robin Kirk opposes Shaw's motion. [Doc. 60.] The Shaw Defendants have replied. [Doc. 65.]

For the following reasons, the Court **DENIES** Shaw's motion to transfer venue.

### I. Background & Procedural History

Plaintiff Robin Kirk brings this suit against, *inter alia*, his former employer, Shaw Environmental, Inc., and its parent company, The Shaw Group, Inc., both Louisiana Corporations headquartered in Baton Rouge. Kirk claims that Shaw wrongfully terminated him in violation of public policy due to his reporting potential violations of the Foreign Corrupt Practices Act ("FCPA") and took adverse employment actions against him based upon a perceived disability. [Doc. 35 at 14-

Case No. 1:09-cv-1405
Gwin, J.

17.] Kirk further claims that Defendant The Shaw Group and Defendants F. Steven Medeiros, Shaw Arabia Limited ("Shaw Arabia"), and Projects International Equities, LLC ("Projects International") tortiously interfered with his employment relationship with Shaw Environmental. [*Id.* at 16.]

Plaintiff Kirk began working for IT Corporation, which Defendant Shaw Environmental acquired, in 2001. [Doc. 16 at 1; Doc. 70-7, Kirk Dep. at 28-30, 39-40.] Kirk was based out of Shaw's Brecksville, Ohio office, and at times commuted to the Cincinnati, Ohio office. [Doc. 70-7, Kirk Dep. at 40.] In March 2005, the Plaintiff began working on a project that ultimately resulted in the formation of Defendant Shaw Arabia. [Doc. 35 at 2.] Shaw Arabia is a joint venture between three entities: Shaw Environmental, Inc. International ("SEI International"), a subsidiary of Defendant The Shaw Group; non-party Pan Environmental Services Co. Ltd. ("Pan ESC"), a Saudi Arabian company represented in the Shaw Arabia venture by Defendant Medeiros, and individual believed to be living in Saudi Arabia; and Defendant Projects International, a Delaware Corporation with its primary place of business in Washington, DC. [*Id.* at 3-4.]

In preparation for his travel to Saudi Arabia, Plaintiff Kirk underwent medical testing in late 2005. [Doc. 70-8, Kirk Dep. at 73.] As a result of this testing, Kirk sought treatment at both the James Cancer Center at Ohio State University and the Cleveland Clinic, both of which diagnosed Kirk with chronic lymphocytic leukemia. [*Id.* at 73-76.] Kirk was nonetheless cleared for foreign assignment. [*Id.* at 79.] On May 27, 2006, Plaintiff Kirk relocated to Riyadh, Saudi Arabia, and in September 2006, Kirk became the General Manager of Shaw Arabia. [*Id.* at 91-92, 108-111; Doc. 35 at 7.]

Plaintiff Kirk worked to prepare proposals on behalf of Shaw Arabia for the Saudi Arabian Presidency of Meteorology and Environment ("the PME"), a Saudi government agency headed by

Case No. 1:09-cv-1405
Gwin, J.

Prince Turki Bin Nasser Bin Abdulaziz ("Prince Turki"), a member of the Saudi Royal family. [Doc. 35 at 5.] Prince Turki was responsible for deciding to whom to award PME contracts. [Id.] Plaintiff Kirk alleges that in approximately the summer or fall of 2007 Defendant Medeiros informed him that Prince Turki was an investor in Shaw Arabia. [Id. at 8; Doc. 70-8, Kirk Dep. at 121-23.] Plaintiff Kirk alleges he informed his supervisor at the time, Al Husak, of Prince Turki's financial interest in Shaw Arabia. [Doc. 35 at 8; Doc. 70-8, Kirk Dep. at 142-144.] Kirk says that he later told Malcolm Jarrell, who replaced Husak as his direct supervisor in November 2007, that Prince Turki was an investor in the joint venture. [Doc. 70-8, Kirk Dep. at 115-16; Doc. 70-9, Kirk Dep. at 152-53.]

In the summer of 2007, Shaw executives became concerned about the profitability of the Shaw Arabia venture. [Doc. 65-6, Thompson Dep. at 20, 25-27.] In approximately July 2007, Patrick Thompson, then-Chief Operating Officer of Shaw Environmental & Infrastructure, Inc. ("Shaw E&I") met with Kirk and DeLong to review Shaw Arabia's financials. [Id. at 25-27.] While Thompson was inclined to immediately shut down Shaw Arabia, after discussing the situation with Ron Oakley, then-President of Shaw E&I, and George Bevan, then-Executive Vice President of Shaw E&I, they collectively decided to continue the venture and review it again in six months. [Id. at 26-27, 35.]

On December, 12, 2007 Plaintiff Kirk returned to the United States for vacation. [Doc. 35 at 11.] Kirk says that upon his arrival, DeLong informed him that he was no longer the General Manager of Shaw Arabia. [Id.] Kirk did not return to Saudi Arabia. He did, however, continue to work on Shaw Arabia projects from the United States. [Doc. 70-10, Kirk Dep. at 218-19.] Plaintiff Kirk alleges that on or about December 17, 2007, he spoke with DeLong, Oakley, Bevan, and

-3-

Case No. 1:09-cv-1405
Gwin, J.

Thompson about his termination from Shaw Arabia. [Doc. 35 at 12.] The Plaintiff claims that during this call, DeLong indicated that the Saudi Arabian partner wanted Kirk removed and the Shaw executives decided that Bevan and Jarrell would travel to Saudi Arabia. [*Id.*]

From January 12-17, 2008, Bevan, Jarrell, DeLong, and other Shaw E&I employees traveled to Saudi Arabia to gather information to determine whether Shaw should go forward as a partner in the Shaw Arabia joint venture. [Doc. 81-2, Bevan Dep. at 22-23.] While in Saudi Arabia, Bevan and others met with Prince Turki. [Doc. 65-5, Bevan Dep. at 35.] Following the trip, Shaw decided to continue its partnership in Shaw Arabia. By February 2008, Shaw's compliance department was investigating Prince Turki's alleged financial interest in Shaw Arabia. [Doc. 35 at 13; Doc. 70-9, Kirk Dep. at 169-172.]

From the time of his return to the United States in December 2007 until March 2008, Kirk resided at his house in Canton, Ohio and worked out of Shaw's Brecksville office. [Doc. 70-10, Kirk Dep. at 151, 218-220.] During January 2008, Kirk also spent a few weeks in Houston working on a proposal for Shaw Arabia. [ *Id.*] Plaintiff Kirk alleges that in March 2008, Harry Dravecky, District Manager for Shaw E&I's Mid-Atlantic division, based in Monroeville, Pennsylvania, contacted him regarding a potential job opportunity with his team. [Doc. 35 at 13; Doc. 70-9, Kirk Dep. at 177-80.] Kirk alleges that he attempted to accept the offered position, but that Jarrell subsequently informed him that The Shaw Group had no jobs available anywhere in the organization for Kirk, and that Shaw would be terminating his employment. [Doc. 35 at 14; Doc. 70-9, Kirk Dep. at 174-75.] Kirk requested a furlough due to his medical condition, and on March 18, 2008 Shaw placed Kirk on a ninety-day unpaid furlough. [Doc. 35 at 14; Doc. 70-9, Kirk Dep. at 181-82; Doc. 70-10, Kirk Dep. at 228-231.] On June 16, 2008, Shaw terminated Kirk. [Doc. 35 at 14; Doc. 16

Case No. 1:09-cv-1405
Gwin, J.

at 8.] In July 2008, Kirk began a new job with Environmental Resources Management ("ERM") in Vietnam, where he is currently living and working. [Doc. 70-7, Kirk Dep. at 16; Doc. 70-11, Kirk Dep. at 253-59.]

In May 2009, Plaintiff Kirk brought the instant lawsuit against the Shaw Defendants in the Cuyahoga County Court of Common Pleas. [Doc. 1-1.] The Defendants removed the case to this Court on June 19, 2009. [Doc. 1.] In his Complaint, Kirk alleges that Shaw wrongfully terminated him in violation of public policy due to his reporting potential violations of the Foreign Corrupt Practices Act ("FCPA") and that The Shaw Group tortiously interfered with his employment relationship with Shaw Environmental. [Doc. 1-1 at 14-17.] On October 14, 2009, Plaintiff Kirk amended his Complaint, adding claims that Shaw discriminated against him based on a perceived disability, his chronic lymphocytic leukemia, and joining Defendants Medeiros, Shaw Arabia, and Projects International,[1] who Kirk alleges tortiously interfered with his employment relationship with Shaw.

On December 11, 2009, the Shaw Defendants filed the instant motion to transfer venue. [Doc. 49.] The Plaintiff opposes the motion to transfer. [Doc. 60.] The Defendants filed their reply on January 18, 2010. [Doc. 65.]

**II. Legal Standard**

Section 1404(a) states, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The decision whether to transfer a case under Section

---

[1] The Plaintiff stipulated to the dismissal of his claims against Projects International, and the Court dismissed it as a party to this litigation February 5, 2010. [Doc. 87, 88.]

-5-

Case No. 1:09-cv-1405
Gwin, J.

1404 is within the district court's discretion. *Kerobo*, 285 F.3d 531, 537 (6th Cir. 2002)(citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)). Rather than look to the well-pleaded complaint, courts examine other evidence of convenience, public interest, and the ends of justice. *See Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).

When ruling on a motion to transfer pursuant to 28 U.S.C. § 1404(a), the Court considers "the private interests of the parties, including their convenience and the convenience of potential witnesses, as well as other public interest concerns, such as systemic integrity and fairness, which come under the rubric of 'interests of justice.'" *Moses v. Bus. Card Express, Inc.*, 929 F.2d 1131, 1137 (6th Cir. 1991) (quoting *Stewart*, 487 U.S. at 30). But, "if venue is proper, a plaintiff's choice of forum is given substantial weight," unless the defendant shows that convenience and the interests of justice "strongly favor transfer." 14D Charles Alan Wright, Arthur R. Miller, and Edward H. Cooper, Federal Practice and Procedure § 3801 (3d ed. & Supp. 2009).

Typically, when more than one forum would be an appropriate venue for trial, some inconvenience to one or more parties will exist no matter which forum is chosen. Consequently, if a change of venue serves merely to shift the inconvenience from the defendant to the plaintiff, a change of venue is improper. *Van Dusen,* 376 U.S. at 646. Consistent with that principle, a generalized assertion by a defendant that witnesses reside in, and documents are located in, the proposed transferee district, is generally insufficient to merit transfer. *Hartford Accident & Indem. Co. v. Dalgarno Transp., Inc.*, 618 F. Supp. 1450 (S.D. Miss.1985).

Rather, the defendant must show some hardship involved in transporting documents to the plaintiff's chosen district, *see AMF, Inc. v. Computer Automation, Inc.*, 532 F. Supp. 1335 (S.D. Ohio 1982), and must also show that witnesses are unwilling to attend or would be severely

Case No. 1:09-cv-1405
Gwin, J.

inconvenienced by a trial in that forum. *See Gdovin v. Catawba Rental Co., Inc.*, 596 F. Supp. 1325, 1327 (N.D. Ohio 1984) ("The moving party must once again do more than merely assert the appropriateness or value of a different forum for witnesses.") (citing *Weltman v. Fletcher*, 431 F. Supp. 448, 451 n. 3 (N.D. Ohio 1976)).

### III. Analysis

As an initial matter, the parties do not dispute that venue would be proper in both the Northern District of Ohio and the Middle District of Louisiana. Instead, the focus of their argument is whether the § 1404(a) factors counsel in favor of transferring this case. Accordingly, this Court considers each factor in turn.

*A. Plaintiff's Choice of Forum*

The parties place varying importance on the initial choice of forum in this case. The Plaintiff alleges that his decision to bring this action in Ohio should be given "great weight." [Doc. 60 at 5.] The Defendants contend that the Plaintiff's choice of forum is of only "minimal value," because, they argue, none of the conduct giving rise to the action occurred in this district. [Doc. 65 at 10.]

The Court agrees with the Defendants that the plaintiff's choice of forum is not determinative, but finds that it is a relevant factor in the § 1404(a) analysis. *Int'l Union, U.A.W. v. Aluminum Co. of America*, 875 F. Supp. 430, 433 (N.D. Ohio 1995). The Court will treat the Plaintiff's choice of forum as one factor to be weighed equally with other relevant factors. *See DeMoss v. First Artists Production Co., Ltd.*, 571 F.Supp. 409, 413 (N.D. Ohio 1983)

Accordingly, this Court finds the choice of forum factor weighs against transfer but that this factor is not determinative.

*B. Convenience of the Parties & Witnesses*

-7-

Case No. 1:09-cv-1405
Gwin, J.

In support of their motion to transfer, the Defendants argue that at least five of the named witnesses are located in Baton Rouge, Louisiana, while no witnesses, including the Plaintiff himself, reside in Ohio. [Doc. 49-1 at 5-6.] The Defendants argue that because Kirk presently works and lives in Vietnam, the Northern District of Ohio is not a more convenient forum for him. [*Id.* at 5.] Moreover, the Defendants dispute that Kirk truly considers Ohio home, argue that Kirk never worked for an Ohio entity, and allege that the events surrounding Kirk's termination from Shaw all took place in Louisiana, where the majority of Shaw's executives work. [*Id.* at 5-7; Doc. 65 at 2-8.] The Defendants further argue that all of the Shaw employee witnesses, who work in Baton Rouge, Houston, Atlanta, Monroeville, Pennsylvania, and London, England, would be more inconvenienced by attending trial in Cleveland than in Baton Rouge. [Doc. 49-1 at 6.] The Defendants also argue that the majority of documentary evidence, including Shaw's corporate and personnel files, is located in Baton Rouge. [*Id.*]

Responding, the Plaintiff says that transfer is inappropriate because it would merely shift inconvenience from the Shaw Defendants to the Plaintiff. [Doc. 60.] The Plaintiff argues that he still considers Canton, Ohio home, and that he still maintains a residence in Ohio, where his family lives. [*Id.* at 1.] Moreover, the Plaintiff was at his office in Brecksville, Ohio when Jarrell told him that Shaw was terminating him. [*Id.* at 8.] Further, the Plaintiff argues that both of his expert witnesses are in Ohio and that while several of the material witnesses are Shaw employees, it is likely easier for those who do not live in Louisiana to travel to Cleveland than to Baton Rouge. [*Id.* at 3-6.]

The evidence before the Court suggests that before and after Kirk's travel to Saudi Arabia, he worked for Shaw out of the Brecksville, Ohio office. Moreover, despite his living and working

-8-

Case No. 1:09-cv-1405
Gwin, J.

in Vietnam, the Plaintiff does appear to maintain a residence in Ohio, and intends to continue to do so. [Doc. 70-7, Kirk Dep. at 16-17.] In fact, Kirk stayed at this residence when he traveled to the United States for his deposition. [*Id.* at 17.] Moreover, while the Defendants may be correct that many of the events giving rise to this lawsuit did not occur in Ohio, they similarly are not concentrated in Baton Rouge, Louisiana. Instead, this case concerns a series of actions taken by individuals in Ohio, Louisiana, Texas, Pennsylvania, and, perhaps primarily, Saudi Arabia.

As a matter of sheer volume, more of the relevant documentary evidence and witnesses appear to be located in the Middle District of Louisiana than the Northern District of Ohio. Thus, requiring the Defendants to try the case in Ohio does present some inconvenience. However, the convenience factor is not merely a numbers game. *See ESPN, Inc. v. Quiksilver, Inc.*, 581 F. Supp. 2d 542, 547-548 (S.D.N.Y. 2008) ("[A] court does not merely tally the number of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum. Instead, the court must qualitatively evaluate the materiality of the testimony that the witnesses may provide."); *Ramsey v. Fox News Network, LLC*, 323 F. Supp. 2d 1352, 1357 (N.D. Ga. 2004); 15 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice & Procedure § 3851 (3d ed. & Supp. 2009) ("The courts also have been careful not to let a motion for transfer become 'a battle of numbers.'").

While many of the identified witnesses do live or work in Louisiana, some of those most closely associated with the Plaintiff's claims–Kirk, DeLong, and Medeiros, for example–not only do not live in Louisiana, but do not live within the United States. While transferring the case to the Middle District of Louisiana would be more convenient for some of Shaw's witnesses, it would likely be less convenient for many witnesses, including the Plaintiff.

Case No. 1:09-cv-1405
Gwin, J.

Moreover, the Defendants do not show any severe inconvenience or undue hardship in securing their witnesses' attendance at trial or in transporting the relevant evidence to trial. *See Kroger Co. v. Merrill*, No. 1:09-CV-722, 2009 WL 2059776, at *3 (N.D. Ohio July 9, 2009) ("While the Defendants themselves may not be located in Ohio, and their witnesses and documents may not be in Ohio, that is insufficient to merit transfer.").

Therefore, the convenience of the parties and witnesses favors transfer only slightly, if at all.

*C. Interests of Justice*

Finally, the Defendants say that the interests of justice support transfer because, they argue, the operative facts giving rise to the claims occurred in Louisiana, the Court should apply Louisiana law, and the citizens of Louisiana have a greater interest in the outcome of the case because Shaw is a large Louisiana corporation. [Doc. 49-1 at 7-10; Doc. 65 at 4-10.] The Plaintiff in response argues that Ohio law applies to the case because the alleged injury occurred in Ohio and because Kirk's employment relationship with Shaw was centered in Ohio, and that citizens of Ohio have a greater interest in the case. [Doc. 60 at 8-10.] The Plaintiff further argues that the interests of justice will be better served by not transferring the case, as it is more likely to be expeditiously resolved in this Court. [*Id.* at 7.]

The Court finds that this factor disfavors transferring the case. Although this Court has recognized that the public has an interest in having a court familiar with governing state law adjudicate diversity suits, *Am. Greetings Corp. v. Cookie Jar Entm't, Inc.*, No. 1:09-CV-1056, 2009 WL 3713686, at *8 (N.D. Ohio, Nov. 3, 2009) (citing *In re Peregoy*, 885 F.2d 349, 352 (6th Cir. 1989)), this factor is not determinative. This Court has not yet determined whether Louisiana law

-10-

Case No. 1:09-cv-1405
Gwin, J.

might control any of the claims in this case.[2/]  Accordingly, the Court finds that the applicable state law does not weigh in favor of transfer.

Moreover, while this Court has acknowledged that the citizens of a state in which a large corporation is situated might have a particular interest in the outcome of a case in which the corporation is a party, *see Am. Greetings*, 2009 WL 3713686, at *9, Shaw is a large corporation that has employees across the world and across the United States, including in Ohio.  Accordingly, the Court does not think that the citizens of Louisiana have more of an interest in the outcome of this case than the citizens of Ohio.

In considering the interests of justice, this Court also looks to achieving a prompt resolution of the case.  See *Fannin v. Jones*, 229 F.2d 368, 369 (6th Cir. 1956)("A prompt trial . . . is not without relevance to the convenience of the parties and witnesses and the interests of justice.").  This action has been pending on this Court's docket since July 2009 and is currently set for trial in June 2010.  The parties have filed numerous contested motions and must file all dispositive motions by next week, the resolution of which requires familiarity with the complex factual and procedural history of this case, including this Court's prior rulings.  Thus, transferring this case to a court unfamiliar with the facts and history of the case would only lead to further unnecessary delay of this matter.

Accordingly, the interests of justice disfavor transfer of this case.

In summary, convenience factors weigh only slightly if at all in favor of transferring this case while the interests of justice weigh against transfer. Considering the facts and the procedural posture of the case, and giving some deference to the Plaintiff's choice of forum, the Court determines on

---

[2/] As the Defendants note, this is an issue that will be raised and decided in considering the parties' dispositive motions, which have not yet been filed. [Doc. 49-1 at 7 n. 1.]

-11-

Case No. 1:09-cv-1405
Gwin, J.

balance that transferring this case is unwarranted.

### IV. Conclusion

For the foregoing reasons, this Court **DENIES** the Defendants' motion to transfer venue.

IT IS SO ORDERED.


Dated: February 5, 2010          s/ *James S. Gwin*
                                                         JAMES S. GWIN
                                                         UNITED STATES DISTRICT JUDGE