UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

-----------------------------------------------------

ROBIN KIRK,

Plaintiff,

vs.

SHAW ENVIRONMENTAL, INC., *et al.,*

Defendants.

-----------------------------------------------------

CASE NO. 1:09-cv-1405

OPINION & ORDER
[Resolving Doc. No. 115.]

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Before the Court is Plaintiff Robin Kirk's Motion for Leave to File a Second Amended Complaint in this wrongful termination case. [Doc. 115.] Defendants The Shaw Group, Inc. and Shaw Environmental, Inc. (collectively, "Shaw") oppose the motion.

For the following reasons, the Court **DENIES** the Plaintiff's motion for leave to file a Second Amended Complaint.

**I. Background & Procedural History**

Plaintiff Robin Kirk brings this suit against his former employer, Shaw Environmental, Inc. ("Shaw Environmental"), and its parent company, The Shaw Group, Inc.; Shaw Arabia Limited ("Shaw Arabia"); and F. Steven Medeiros. Kirk claims that Shaw Environmental wrongfully terminated him in violation of public policy due to his reporting potential violations of the Foreign Corrupt Practices Act ("FCPA") and took adverse employment actions against him based upon a

perceived disability. [Doc. 35 at 14-17.] Kirk further claims that Defendants The Shaw Group, Medeiros, and Shaw Arabia tortiously interfered with his employment relationship with Shaw Environmental. [*Id.* at 16.]

Plaintiff Kirk worked for Defendant Shaw Environmental from 2001[1/] until Shaw terminated him in June 2008. [*Id.* at 1.] In March 2005, the Plaintiff began working on a project that ultimately resulted in the formation of Defendant Shaw Arabia. [*Id.* at 2.] Shaw Arabia is a joint venture between three entities: Shaw Environmental, Inc. International ("SEI International"), a subsidiary of Defendant The Shaw Group; non-party Pan Environmental Services Co. Ltd. ("Pan ESC"), a Saudi Arabian company represented in the Shaw Arabia venture by Medeiros; and Projects International Equities, LLC.[2/] [*Id.* at 3-4.]

In preparation for his travel to Saudi Arabia, Plaintiff Kirk underwent medical testing in late 2005. [Doc. 70-8, Kirk Dep. at 73.] As a result of this testing, Kirk ultimately learned he had chronic lymphocytic leukemia. [*Id.* at 73-76.] Kirk was nonetheless cleared for foreign assignment. [*Id.* at 79.] On May 27, 2006, Plaintiff Kirk relocated to Riyadh, Saudi Arabia, and in September 2006, Kirk became the General Manager of Shaw Arabia. [*Id.* at 91-92, 108-111; Doc. 35 at 7.]

Plaintiff Kirk worked to prepare proposals on behalf of Shaw Arabia for the Saudi Arabian Presidency of Meteorology and Environment ("the PME"), a Saudi government agency headed by Prince Turki Bin Nasser Bin Abdulaziz ("Prince Turki"), a member of the Saudi Royal family. [Doc.

[1/]Kirk actually began his employment in 2001 with corporate entity that Shaw later acquired. [Doc. 70-7, Kirk Dep. at 26-30.]

[2/]Kirk also named Projects International as a Defendant in his Amended Complaint. Kirk moved to voluntarily dismiss with prejudice Projects International as a Defendant, and the Court approved the stipulated dismissal on February 5, 2010. [Docs. 87, 88.]

35 at 5.] Prince Turki was responsible for deciding to whom to award PME contracts. [*Id.*] Plaintiff Kirk alleges that in approximately the summer or fall of 2007 Defendant Medeiros informed him that Prince Turki was an investor in Shaw Arabia. [*Id.* at 8; Doc. 70-8, Kirk Dep. at 121-23.] Plaintiff Kirk alleges he informed his supervisor at the time, Al Husak, of Prince Turki's financial interest in Shaw Arabia. [Doc. 35 at 8; Doc. 70-8, Kirk Dep. at 142-144.] Kirk says that he later told Malcolm Jarrell, who replaced Husak as his direct supervisor in November 2007, that Prince Turki was an investor in the joint venture. [Doc. 70-8, Kirk Dep. at 115-16; Doc. 70-9, Kirk Dep. at 152-53.]

On December, 12, 2007 Plaintiff Kirk returned to the United States for vacation. [Doc. 35 at 11.] Kirk says that upon his arrival, his supervisor informed him that he was no longer the General Manager of Shaw Arabia. [*Id.*] Kirk did not return to Saudi Arabia. From the time of his return to the United States in December 2007 until March 2008, Kirk worked on various Shaw proposals, but was not part of a permanent project team. [Doc. 70-10, Kirk Dep. at 151, 218-220.] Plaintiff Kirk alleges that in March 2008, Harry Dravecky, District Manager for Shaw E&I's Mid-Atlantic division, regarding a potential job opportunity with his team. [Doc. 35 at 13; Doc. 70-9, Kirk Dep. at 177-80.] Kirk alleges that he attempted to accept the offered position, but that Jarrell subsequently informed him that The Shaw Group had no jobs available anywhere in the organization for Kirk, and that Shaw would be terminating his employment. [Doc. 35 at 14; Doc. 70-9, Kirk Dep. at 174-75.] Kirk requested a furlough due to his medical condition, and on March 18, 2008, Shaw placed Kirk on a ninety-day unpaid furlough. [Doc. 35 at 14; Doc. 70-9, Kirk Dep. at 181-82; Doc. 70-10, Kirk Dep. at 228-231.] On June 16, 2008, the plaintiff was terminated. [Doc. 35 at 14; Doc. 16 at 8.]

In May 2009, Plaintiff Kirk brought the instant lawsuit against the Shaw Defendants in the Cuyahoga County Court of Common Pleas. [Doc. 1-1.] Shaw removed the case to this Court on June 19, 2009. [Doc. 1.] In his Complaint, Kirk alleges that Shaw wrongfully terminated him in violation of public policy due to his reporting potential violations of the Foreign Corrupt Practices Act ("FCPA") and that The Shaw Group tortiously interfered with his employment relationship with Shaw Environmental. [Doc. 1-1 at 14-17.] The Shaw Defendants moved to dismiss the original Complaint on July 27, 2009. [Doc. 15.] This motion is still pending before the Court.

On September 4, 2009, the Court held a Case Management Conference and set deadlines for the parties to file any amended pleadings and dispositive motions. The Court originally set a cut-off date of September 29, 2009 for the Plaintiff to join any parties and file an amended complaint. [Doc. 25.] On September 29, the Plaintiff moved for an extension of time until October 6, 2009 to amend the pleadings and join parties, which the Court granted. [Docs. 29, 30.] Then, on October 6, the Plaintiff again moved for an extension of time to amend his pleadings until October 13, 2009, which the Court also granted. [Docs. 32, 33.] In its order granting the second extension of time to amend, the Court explicitly stated that no further extensions would be granted absent especially unforeseen circumstances. [Doc. 33.]

On October 14, 2009, Plaintiff Kirk filed his Amended Complaint, adding claims that Shaw discriminated against him based on a perceived disability, his chronic lymphocytic leukemia, and joining Defendants Medeiros, Shaw Arabia, and Projects International, who Kirk alleges tortiously interfered with his employment relationship with Shaw.[3/]

[3/] As described above, the Court dismissed Projects International pursuant to a stipulated dismissal between Kirk and Projects International on February 5, 2010. [Doc. 88.]

On February 3, 2010, the Court ordered the Plaintiff to advise the Court via electronic filing of the status of service upon Defendant Medeiros, as the docket showed no proof of service and no appearance entered on behalf of Medeiros. [Doc. 85.] After the Plaintiff failed to comply with this Order, the Court issued a Show Cause order on February 12, 2010, instructing the Plaintiff that unless he showed good cause for his failure to perfect service upon Defendant Medeiros, Medeiros would be dismissed for failure to prosecute. [Doc. 98.] After the Plaintiff failed to respond to this Order, the Court dismissed Medeiros without prejudice on February 22, 2010. [Doc. 106.]

On February 8, 2010, Shaw Arabia filed a motion to dismiss Kirk's claim against it in the Amended Complaint. [Doc. 94.] Specifically, Shaw Arabia moves the Court (1) to dismiss the claim pursuant to Federal Rule of Civil Procedure 12(b)(5) because Kirk has not properly served Shaw Arabia pursuant to Rule 4(f); (2) to dismiss the claim pursuant to Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over Shaw Arabia; (3) to dismiss the claim pursuant to Fed. R. Civ. P. 16(f) because Kirk filed his Amended Complaint adding Shaw Arabia as a Defendant late, in violation of the Court's scheduling order and Rule 16; and (4) to dismiss the claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim of intentional tortious interference upon which relief may be granted. [*Id.*]

Instead of filing a brief opposing Shaw Arabia's motion to dismiss, on March 2, 2010, the Plaintiff filed the instant motion for leave to file a Second Amended Complaint and for an extension of time to perfect service on Defendants Medeiros and Shaw Arabia.[4/] [Doc. 115.] In his proposed

[4/]Prior to filing this instant motion, the Plaintiff filed two motions for extensions of time in which to file his opposition to Shaw Arabia's motion to dismiss. [Docs. 107, 109.] The Court granted both of these motions, extending the deadline for the Plaintiff's filing until March 1, 2010. [Doc. 112.] The Plaintiff filed this motion one day later, on March 2, 2010. [Doc. 115.]

Second Amended Complaint, the Plaintiff seeks to clarify his claim against Medeiros and Shaw Arabia. [Doc. 115-2.] The proposed Second Amended Complaint also does not include a discrimination claim against Shaw. [*Id.*] The Shaw Defendants oppose the motion. [Doc. 116.]

## II. Legal Standard

Under Federal Rule of Civil Procedure 16(b) a district court "must issue a scheduling order" that "limit[s] the time to . . . amend the pleadings." Fed. R. Civ. P. 16. "A schedule may be modified only for good cause and with the judge's consent." *Id.* The Rule is designed to ensure that "at some point both the parties and the pleadings will be fixed." *Leary v. Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003) (quoting Fed. R. Civ. P. 16, 1983 advisory committee's notes). Before a district court can grant leave to amend under Rule 16(b), the amending party must make the "good cause" showing. *Leary*, 349 F.3d at 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under [Federal] Rule [of Civil Procedure] 15(a)."). The court should then determine the propriety of an amendment under Rule 15. *Id.*

Rule 15 "allows a party to amend its pleading after its initial amendment only by leave of the court, and 'leave shall be freely given when justice so requires.'" *Midkiff v. Adams Cty. Reg'l Water Dist.*, 409 F.3d 758, 767 (6th Cir. 2005) (quoting Fed. R. Civ. P. 15(a)). "The thrust of Rule 15 is to reinforce the principle that cases should be tried on their merits rather than the technicalities of pleadings." *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir. 1982).

Accordingly, the Supreme Court has directed that

> [i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should,

as the rules require, be "freely given."

*Foman v. Davis*, 371 U.S. 178, 182 (1962) (quoting Fed. R. Civ. P. 15(a)). The Court examines these *Foman* factors in light of Rule 1's directive that the rules "are to be construed to secure the just, speedy, and inexpensive determination of every action." *See* *Foman*, 371 U.S. at 182.

Expanding on *Foman* and *Zenith Radio*, the Sixth Circuit has noted that

> [i]n determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] significantly delay the resolution of the dispute . . . .

*Phelps v. McClellan*, 30 F.3d 658, 662-63 (6th Cir. 1994) (citation omitted). In analyzing the prejudice created, the Court considers, among other things, whether an amendment would make the case unduly complex and confusing and whether the defending party would have conducted the defense in a substantially different manner had the plaintiff previously tendered the amendment. *See* *Duchon v. Cajon Co.*, 791 F.2d 43, 48 (6th Cir. 1986) (*per curiam*); *Morse v. McWhorter*, 290 F.3d 795, 800, 801 (6th Cir. 2002).

## III. Analysis

With his motion, the Plaintiff seeks to amend his Complaint to "state[] a claim of intentional interference with employment relations to satisfy pleading requirements per *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 [(2007)]." [Doc. 115-1 at 1.] The Plaintiff also seeks an extension of time to accomplish service upon Defendant Shaw Arabia and dismissed Defendant Medeiros. [*Id.* at 2.]

The Shaw Defendants oppose the motion because the Proposed Second Amended Complaint removes the claims of discrimination based upon disability against Shaw Environmental, which the Plaintiff does not mention in his motion. [Doc. 116.] The Shaw Defendants argue that allowing the Plaintiff to voluntarily dismiss these claims via amendment is procedurally improper and prejudicial

to them because Shaw already answered these claims on November 16, 2009 [Doc. 41] and moved for summary judgment on these claims on February 8, 2010 [Doc. 96]. The Defendants argue that dismissal via amendment is therefore improper under Fed. R. Civ. P. 41(a)(1). The Defendants further argue that dismissal via amendment would be prejudicial to them because, at this stage of litigation, dismissal of these claims should be with prejudice and, they argue, at Plaintiff's cost.[5/] [Doc. 116.]

In his motion, the Plaintiff provides no explanation for his failure to amend this claim sooner, nor does he provide good cause for his failure to yet properly serve Defendants Medeiros and Shaw Arabia. Moreover, as explained above, the Plaintiff does not mention the deletion of the discrimination claims against Shaw Environmental in his motion or brief in support. The Court agrees with the Shaw Defendants that dismissal of these claims in this manner would be improper under Fed. R. Civ. P. 41 and potentially prejudicial to them, as they have already expended considerable costs defending against the discrimination claims.

More importantly, Defendants Shaw Arabia and Medeiros would be severely prejudiced if the Court were to grant the Plaintiff's motion. Shaw Arabia has not yet responded to the instant motion. However, in its Motion to Dismiss, Shaw Arabia argued that the First Amended Complaint should be dismissed under both Rule 12 and Rule 16 because the Plaintiff's initial amendment and subsequent delayed and improper attempt at service was prejudicial to Shaw Arabia because by the time the Plaintiff attempted service on Shaw Arabia in late December 2009, the deadlines for discovery necessary for dispositive motions (January 18, 2010) and for filing dispositive motions (February 8, 2010) were only a few weeks away. [Doc. 94-1 at 11-12.] Shaw Arabia argues that, due

---

[5/] Shaw also argues that the Plaintiff's failure to alert the Court and the Parties to this "significant change" in his Second Amended Complaint should be subject to sanctions pursuant to Rule 11. [Doc. 116.]

to Kirk's late amendment and attempted service, it did not have an opportunity to participate in then-ongoing discovery or to submit any discovery requests by the deadline. This argument has even more force in considering the instant motion, where the proposed amendment would take place after the relevant deadlines have already passed, and only 3 months before the case is set for trial in early June. Thus, unless the Court were to extend the discovery and dispositive motion deadlines again for several weeks–which it is not inclined to do this close to the trial date–Medeiros and Shaw Arabia would not have the opportunity to file motions for summary judgment.[6/]

Moreover, Defendant Medeiros was dismissed without prejudice, and, if the Court grants Shaw Arabia's motion to dismiss, such dismissal would also be without prejudice. *See* 5B Charles Alan Wright and Arthur R. Miller, Federal Practice and Procedure § 1353 at 345-46 (3d ed. 2004)(order dismissing complaint for improper service under Rule 12(b)(5), like other 12(b) motions, is not on the merits and has no *res judicata* effect). Plaintiff's claim for tortious interference against Medeiros and Shaw Arabia is not so intertwined with his claims against the Shaw Defendants that they must be pursued in the same case. Accordingly, the Plaintiff could pursue a separate lawsuit on his tortious interference claim against Shaw Arabia and Medeiros, and thus is not severely prejudiced by the denial of his motion for leave to amend.

## IV. Conclusion

For the foregoing reasons, the Court **DENIES** the Plaintiff's motion for leave to file a second amended complaint and **DENIES AS MOOT** his motion for an extension of time to serve the proposed second amended complaint upon Defendants Medeiros and Shaw Arabia.

---

[6/] Defendant Medeiros has also not responded to the instant motion, as the Plaintiff has not yet effected any service upon him. Defendant Medeiros would be similarly, if not more, prejudiced by the proposed amendment as Defendant Shaw Arabia.

Further, the Court **ORDERS** the Plaintiff to file his opposition brief to Shaw Arabia's motion to dismiss, if any, **immediately.** Shaw Arabia's reply brief in support of its motion to dismiss, if any, shall be filed by **Friday, March 12, 2010**. If the Plaintiff does not file his opposition to Shaw Arabia's motion to dismiss by Wednesday, March 10, 2010, the Court will consider that motion unopposed.

IT IS SO ORDERED.

Dated: March 8, 2010

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE