UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| ROBIN KIRK,<br><br>Plaintiff,<br><br>vs.<br><br>SHAW ENVIRONMENTAL, INC., *et al.,*<br><br>Defendants. | CASE NO. 1:09-cv-1405<br><br>OPINION & ORDER<br>[Resolving Doc. No. 94.] |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Defendant Shaw Arabia Limited ("Shaw Arabia") moves the Court to dismiss Plaintiff Robin Kirk's claim against it in this wrongful termination case. [Doc. 94.] The Plaintiff opposes Shaw Arabia's motion. [Docs. 121, 125.] Shaw Arabia has replied. [Doc. 127.]

For the following reasons, the Court **GRANTS** Shaw Arabia's motion to dismiss.

## I. Background & Procedural History

In this suit, Plaintiff Robin Kirk alleges that his former employer, Shaw Environmental, Inc., wrongfully terminated him in violation of Ohio public policy. Kirk alleges, *inter alia*, that Shaw Environmental fired him after he reported potential violations of the Foreign Corrupt Practices Act ("FCPA"). [Doc. 35 at 14-16.] Kirk further claims that Defendant Shaw Arabia tortiously interfered

with his employment relationship with Shaw Environmental.[1/] [*Id.* at 16.]

Plaintiff Kirk worked for Defendant Shaw Environmental from 2001 until Shaw fired him in June 2008. [Doc. 35 at 1.] In March 2005, the Plaintiff began working on a project that ultimately resulted in the formation of Defendant Shaw Arabia Limited, a joint venture between three entities: Shaw Environmental, Inc. International ("SEI International"), a subsidiary of dismissed Defendant the Shaw Group; non-party Pan Environmental Services Co. Ltd. ("Pan ESC"), a Saudi Arabian company represented in the Shaw Arabia venture by dismissed Defendant F. Steven Medeiros; and dismissed Defendant Projects International, LLC. [*Id.* at 3-4.] Throughout Plaintiff Kirk's involvement in the Shaw Arabia venture, non-party General Mike DeLong, then a Shaw employee, supervised Kirk. [*Id.* at 6.]

On May 27, 2006, Plaintiff Kirk relocated to Riyadh, Saudi Arabia, and in September 2006, Kirk became the General Manager of Shaw Arabia. [Doc. 35 at 7.] In that position, Plaintiff Kirk prepared proposals on behalf of Shaw Arabia for the Saudi Arabian Presidency of Meteorology and Environment ("the PME"), a Saudi government agency headed by Prince Turki Bin Nasser Bin Abdulaziz ("Prince Turki"), a member of the Saudi Royal family. [Doc. 35 at 5.] Prince Turki decided to whom to award PME contracts. [*Id.*] Plaintiff Kirk alleges that in approximately June 2007, Medeiros informed him that Prince Turki was an investor in Shaw Arabia. [*Id.* at 8.] Plaintiff Kirk alleges he informed his supervisor, Al Husak, that Prince Turki may have had a financial interest in Shaw Arabia. [*Id.* at 8.] Kirk alleges that he also attempted to convey his concern regarding Prince Turki to DeLong. [*Id.* at 9-10.]

---

[1/] In his Amended Complaint, Kirk also alleged that the Shaw Group, Inc., the parent company of Shaw Environmental; Projects International Equities, LLC; and F. Steven Medeiros tortiously interfered with his employment relationship with Shaw Environmental. The Shaw Group, Projects International, and Medeiros have all been dismissed as Defendants to this suit. [*See* note 3, *infra*; Docs. 88, 106, 140.]

On December, 12, 2007 Plaintiff Kirk returned to the United States for vacation. [Doc. 35 at 11.] Kirk alleges that upon his arrival, DeLong informed him that Shaw was removing Plaintiff Kirk from the position as the General Manager of Shaw Arabia. [*Id.*] Kirk did not return to Saudi Arabia. Plaintiff Kirk alleges that on or about December 17, 2007, he spoke with DeLong, Ron Oakley, George Bevan, and Patrick Thompson, all members of Shaw Environmental's and/or the Shaw Group's executive management, about his termination from Shaw Arabia. [Doc. 35 at 12.] The Plaintiff claims that during this call, DeLong indicated that the Saudi Arabian partner, non-party Pan ESC, solicited Kirk's removal. [*Id.*] Kirk further alleges that following his return to the United States, he sent several emails to Shaw management in attempt to discuss his concerns about Prince Turki. [*Id.* at 11-13.]

Kirk alleges that in February 2008, Kerry David, in house counsel for the Shaw Group, contacted him to discuss Prince Turki and Shaw Arabia. [*Id.* at 13.] Plaintiff Kirk alleges that he told David that he had knowledge about Prince Turki's potential conflicted financial interest and told David that he had conveyed this information to Delong, Husak, and Malcolm Jarrell, who had replaced Husak as Kirk's supervisor. [*Id.*]

Plaintiff Kirk alleges that in March 2008 he spoke with Harry Dravecky, District Manager for Shaw Environmental & Infrastructure's Mid-Atlantic division, regarding a potential job opportunity with Dravecky's team. [Doc. 35 at 13.] Kirk claims that he attempted to accept the offered position, but that Jarrell subsequently informed him that the Shaw Group had no jobs available anywhere in the organization for Kirk, and that Shaw would terminate Kirk's employment. [*Id.* at 14.] Kirk requested a furlough due to a medical condition, and on March 18, 2008, Shaw placed Kirk on a ninety-day unpaid furlough. [*Id.*] On June 16, 2008, Shaw fired the plaintiff. [*Id.*]

In May 2009, Plaintiff Kirk sued Shaw Environmental and its parent company, the Shaw Group, in the Cuyahoga County Court of Common Pleas. [Doc. 1-1.] The Defendants removed the case to this Court. [Doc. 1.] In his Complaint, Kirk alleged that Shaw wrongfully terminated him in violation of Ohio public policy due to his reporting potential violations of the Foreign Corrupt Practices Act ("FCPA") and that the Shaw Group tortiously interfered with his employment relationship with Shaw Environmental. [Doc. 1-1 at 14-17.]

On October 14, 2009, Plaintiff Kirk amended his Complaint, joining Defendants Medeiros, Shaw Arabia, and Projects International, who Kirk alleges also tortiously interfered with his employment relationship with Shaw Environmental.[2/] [Doc. 35.] The Court has dismissed the Shaw Group, Projects International, and Medeiros as parties to this action.[3/] [Docs. 88, 106, 140.]

On February 8, 2010, Shaw Arabia filed a motion to dismiss Kirk's claim against it in the Amended Complaint, which is now before the Court. [Doc. 94.] Instead of filing a response to Shaw Arabia's Motion to dismiss, the Plaintiff moved on March 2, 2010 for leave to file a Second

[2/] The Plaintiff also added a claim that Shaw Environmental discriminated against him based on a perceived disability, his chronic lymphocytic leukemia. [Doc. 35 at 16-17.]

[3/] The Shaw Defendants moved to dismiss the original Complaint on July 27, 2009. [Doc. 15.] After the Court granted multiple motions for extensions of time, the Plaintiff filed his opposition to the Shaw Defendants' motion to dismiss on March 1, 2010. [Doc. 111.] On March 31, 2010, the Court granted the Defendants' motion in part, dismissing the Plaintiff's claim for tortious interference against the Shaw Group, and dismissing the Shaw Group as a party to the suit. [Doc. 140.]

Following the issuance of a Show Cause Order [Doc. 98], the Court dismissed Defendant Medeiros without prejudice for the Plaintiff's failure to execute service upon Medeiros [Doc. 106].

The Court dismissed Projects International pursuant to a stipulated dismissal between Kirk and Projects International on February 5, 2010. [Doc. 88.]

On February 8, 2010, the Shaw Group and Shaw Environmental filed separate motions for summary judgment on all claims the Plaintiff alleges against them in his Amended Complaint. [Docs. 93, 96.] The Court denied the Shaw Group's motion as moot following its dismissal of the Plaintiff's sole claim against the Shaw Group. [Doc. 140.] Shaw Environmental's motion for summary judgment is still pending before the Court.

Amended Complaint. [Doc. 115.] The Court denied this motion on March 8, 2010, holding that allowing the Plaintiff to further amend his Complaint at such a late time would unfairly prejudice the Defendants. [Doc. 118.] The Plaintiff then filed his opposition to Shaw Arabia's motion on March 11, 2010.[4/] [Doc. 121.] Shaw Arabia replied on March 15, 2010. [Doc. 127.]

In its motion, Shaw Arabia moves the Court (1) to dismiss Kirk's claim against it pursuant to Federal Rule of Civil Procedure 12(b)(5) because Kirk has not properly served Shaw Arabia pursuant to Rule 4(f); (2) to dismiss the claim pursuant to Fed. R. Civ. P. 12(b)(2) because this Court lacks personal jurisdiction over Shaw Arabia; (3) to dismiss the claim pursuant to Fed. R. Civ. P. 16(f) because Kirk filed his Amended Complaint adding Shaw Arabia as a Defendant late, in violation of the Court's scheduling order and Rule 16; and (4) to dismiss the claim pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim of intentional tortious interference upon which relief may be granted. [*Id.*]

For the reasons expressed below, the Court finds that it does not have personal jurisdiction over Defendant Shaw Arabia. Accordingly, it grants Shaw Arabia's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2) and does not reach the other issues the parties raise.

**II. Legal Standard**

Under Federal Rule of Civil Procedure 12(b)(2), a defendant may move a court to dismiss a case for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). In a diversity case, the law of the

[4/]On March 12, 2010, the Plaintiff filed an "errata" to his brief in opposition to Shaw Arabia's motion to dismiss, which included the Plaintiff's Declaration. [Doc. 125.] Shaw Arabia urges the Court to disregard Kirk's Declaration due to the improper and untimely filing of the Declaration as an "errata" to the opposition brief. [Doc. 127 at n. 1.] While the Court disapproves of any party's attempt to circumvent the deadlines established by the Court and is troubled by the Plaintiff's repeated failure to file documents in compliance with these deadlines in this case, it finds that in this instance, the Plaintiff's belated filing does not prejudice the Defendants because, even considering the Plaintiff's Declaration, the Court finds that it does not have personal jurisdiction over Shaw Arabia. *See* Part III, *infra*.

forum state in which the district court sits determines whether such jurisdiction exists. *Brunner v. Hampson*, 441 F.3d 457, 463 (6th Cir. 2006). In order for a federal court in Ohio to exercise jurisdiction over a defendant, it must find both a statutory basis for jurisdiction under Ohio law and that its exercise of jurisdiction over the defendant is permissible under the Due Process Clause. *Id.*

The plaintiff bears the burden of demonstrating that personal jurisdiction exists. *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 549 (6th Cir. 2007). Where the defendant files a properly supported motion to dismiss, "the plaintiff may not stand on [its] pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Theunissen v. Matthews d/b/a Matthews Lumber Transfer*, 935 F.2d 1454, 1458 (6th Cir. 1991) (citation omitted). Nonetheless, when ruling on a motion to dismiss for lack of personal jurisdiction, a district court, "without conducting an evidentiary hearing, . . . must consider the pleadings and affidavits in a light most favorable to the plaintiff." *Dean v. Motel 6 Operating LP*, 134 F.3d 1269, 1272 (6th Cir. 1998) (citations omitted). The plaintiff "need only make a prima facie showing of jurisdiction," and the court "does not weigh the [defendant's] controverting assertions." *Id.* Dismissal is proper where the plaintiff's factual allegations taken together fail to establish a *prima facie* case for personal jurisdiction. *Compuserve, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

**III. Analysis**

In its motion, Shaw Arabia moves the Court to dismiss the Plaintiff's claim against it pursuant to Federal Rules of Civil Procedure 12(b)(5)(insufficient service of process), 12(b)(2)(lack of personal jurisdiction), 16(f)(failure to obey a scheduling order), and 12(b)(6)(failure to state a claim upon which relief can be granted). Because the Court finds that it does not have personal jurisdiction over Shaw Arabia, it grants Shaw Arabia's motion to dismiss pursuant to Federal Rule

of Civil Procedure 12(b)(2) and does not reach the additional claims.

Personal jurisdiction over Defendant Shaw Arabia exists if the company is amenable to service of process under Ohio's long-arm statute and if the exercise of personal jurisdiction would not deny the Defendant due process. *See* *Brunner*, 441 F.3d at 463. The Ohio Supreme Court has stated that "the Ohio long-arm statute does not extend to the constitutional limits of the Due Process Clause." *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000). "Nevertheless, in evaluating whether personal jurisdiction is proper under Ohio's long-arm statute, [the Sixth Circuit has] consistently focused on whether there are sufficient minimum contacts between the nonresident defendant and the forum state so as not to offend 'traditional notions of fair play and substantial justice.'" *Bird v. Parsons*, 289 F.3d 865, 871-72 (6th Cir. 2002) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

In this case, Plaintiff Kirk claims jurisdiction under the Ohio long-arm statute's section 2307.382(A)(6). It provides:

> (A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: . . .
>
> > (6) Causing tortious injury to any person by an act outside this state committed with the purpose of injuring persons, when he might reasonably have expected that some person would be injured thereby in this state; . . .
>
> (C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him.

Ohio Rev. Code § 2307.382.

The Plaintiff alleges that Medeiros, acting on behalf of Defendant Shaw Arabia, "contacted Defendants [Shaw Environmental] and the Shaw Group, [and] made disparaging statements to them aimed at negatively affecting Plaintiff's job in Ohio." [Doc. 121 at 2.] The Plaintiff argues that

"Medeiros and Shaw Arabia should have reasonably expected that their statements would injure Plaintiff in Ohio," and that therefore Shaw Arabia is amenable to service of process under Ohio's long arm statue. [*Id.*]

In its reply brief, Shaw Arabia does not argue that it is not amenable to service of process under this section of Ohio's long arm statute, but rather argues that this Court's exercise of jurisdiction over Shaw Arabia would offend the Due Process Clause. [*See* Doc. 127.] Due process requires that a defendant "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). In a given case, one of two frameworks will determine the limits of due process: general jurisdiction or specific jurisdiction. *Third Nat'l Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). Here, the Plaintiff does not argue, and the Court finds that the evidence does not support, that this Court has general jurisdiction over Shaw Arabia. Accordingly, the Court considers whether Ohio has specific jurisdiction over Shaw Arabia in this case.

The Sixth Circuit has established a three-part test to determine whether specific jurisdiction exists over a nonresident defendant:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1988); *see also* *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007). Even construing all factual allegations in favor of the Plaintiff, the Court finds that Plaintiff Kirk fails to show that the facts of this case satisfy any of the

prongs of the Sixth Circuit's due process test, and that the Plaintiff therefore fails to make a *prima facie* showing of specific jurisdiction in this case.

Under the first prong of the test, "the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state." *S. Mach. Co. v. Mohasco Inds., Inc.*, 401 F.2d 372, 381 (6th Cir. 1968). Purposeful availment is the "constitutional touchstone" of personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985); *see also Air Prods. and Controls,* 503 F.3d at 550 (purposeful availment is the *sine qua non* of the Sixth Circuit's personal jurisdiction due process test). It exists where the defendant's contacts with the forum state "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State" such that he "'should reasonably anticipate being haled into court there.'" *Burger King*, 471 U.S. at 474-75 (emphasis in original)(quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)).

The Plaintiff argues that Ohio has personal jurisdiction over Shaw Arabia under the "effects test" the Supreme Court enunciated in *Calder v. Jones*, 465 U.S. 783 (1984). In *Calder*, the Supreme Court held that a California court had jurisdiction over the defendants, writers and editors of a magazine who were Florida residents because

> [t]he allegedly libelous story concerned the California activities of a California resident. It impugned the professionalism of an entertainer whose television career was centered in California. The article was drawn from California sources, and the brunt of the harm, in terms of both the respondent's emotional distress and the injury to her professional reputation, was suffered in California. In sum, California is the focal point both of the story and of the harm suffered.

*Id.* at 788-89. Kirk argues that this Court has personal jurisdiction over Shaw Arabia under *Calder* because, he alleges, Medeiros knew that the Plaintiff resided in Ohio, and thus Shaw Arabia should have known that the brunt of the injury caused by its allegedly tortious conduct would be felt by the

Plaintiff in Ohio. [Doc. 121 at 4.] However, "[t]he Sixth Circuit, as well as other circuits, have narrowed the application of the *Calder* 'effects test,' such that the mere allegation of intentional tortious conduct which has injured a forum resident does not, by itself, always satisfy the purposeful availment prong." *Air Prods. and Controls*, 503 F.3d at 552 (citing *Scotts Co. v. Aventis S.A.*, 145 F. App'x 109, 113 n. 1 (6th Cir. 2005)("[The Sixth Circuit has] applied *Calder* narrowly by evaluating whether a defendant's contacts with the forum may be enhanced if the defendant expressly aimed its tortious conduct at the forum and plaintiff's forum state was the focus of the activities of the defendant out of which the suit arises.").

In *Reynolds v. International Amateur Athletic Federation*, the Sixth Circuit applied the *Calder* effects test to the plaintiff's defamation and intentional interference with business relations claims under Ohio law. 23 F.3d 1110, 1120 (6th Cir. 1994). The Sixth Circuit held that the district court did not have jurisdiction over the defendant, an unincorporated organization based in London, England that published a press release saying the plaintiff, a track athlete, tested positive for a banned substance. *Id.* The court distinguished *Calder* for several reasons:

> First, the press release concerned Reynolds' activities in Monaco, not Ohio. Second, the source of the controversial report was the drug sample taken in Monaco and the laboratory testing in France. Third, Reynolds is an international athlete whose professional reputation is not centered in Ohio. Fourth, the defendant itself did not publish or circulate the report in Ohio . . . . Fifth, Ohio was not the "focal point" of the press release. The fact that the IAAF could foresee that the report would be circulated and have an effect in Ohio is not, in itself enough to create personal jurisdiction.

*Id.* This case is analagous to *Reynolds*.

Kirk alleges that Shaw Arabia tortiously interfered with his employment relationship with Shaw Environmental when Medeiros, who the Plaintiff claims acted as an agent for Shaw Arabia, made disparaging statements about Kirk to individuals at Shaw Environmental and the Shaw Group.

[Doc. 121 at 2; *see also* Doc. 35 at 16.] In support of his claim, Kirk offers three emails that Medeiros sent to DeLong concerning Kirk's employment activities with Shaw Arabia. [Doc. 125.] However, the allegedly disparaging statements Medeiros made concerned Kirk's activities in Saudi Arabia, not in Ohio. Moreover, Medeiros, who works and resides in Saudi Arabia, sent the emails to DeLong, then a Shaw Arabia/Shaw Group employee who traveled between Tampa, Florida and Saudi Arabia. [*See* Doc. 70-8, Kirk Dep. at 113-15.] DeLong then forwarded at least one of the emails to Bevan, a Shaw Group employee who works and resides in Baton Rouge, Louisiana. [*See* Doc. 125-4.]

Kirk does not allege and does not present any evidence that Medeiros sent emails to anyone in Ohio, that DeLong forwarded the emails to anyone in Ohio, or that any Shaw Environmental or Shaw Group employee in Ohio ever received the emails. Accordingly, as in *Reynolds*, this case can be distinguished from *Calder* because the allegedly tortious conduct–the statements Medeiros made to Shaw employees–centered around the Plaintiff's activities in Saudi Arabia, not in Ohio, and because neither Medeiros nor Shaw Arabia (or anyone else for that matter) published or circulated the statements in Ohio. *See* *Reynolds*, 23 F.3d at 1120; *see also* *Cadle Co. v. Schlictmann*, 123 F. App'x 675, 679-80 (6th Cir. 2005)(holding Ohio did not have personal jurisdiction over out-of-state defendant who posted online comments about plaintiff because the website comments, while about an Ohio resident, did not concern that resident's Ohio activities and were not specifically targeted or directed at Ohio readers). Thus, Shaw Arabia did not purposefully avail itself of Ohio by Medeiro's making disparaging statements about the Plaintiff.

The Plaintiff similarly fails to satisfy the second and third prongs of the Sixth Circuit test. Under the second prong of the test, the cause of action must "arise from" Defendant Shaw Arabia's

activities in Ohio. *See Air Prods. and Controls*, 503 F.3d at 553. The Plaintiff has not alleged that Defendant Shaw Arabia owns any property in Ohio, has any office or facilities in Ohio, has any place of business in Ohio, has employees agents, or sales representatives in Ohio, is licensed to do business in Ohio, or has any telephone listing in Ohio. *See Winston v. Leak*, 159 F.Supp.2d 1012, 1016 (S.D. Ohio 2001). Kirk claims that his claim "arises from" Shaw Arabia's contacts with Ohio because "the consequence of Shaw Arabia's conduct . . . arose directly from Shaw Arabia's wrongful *out-of-state activities*." [Doc. 121 at 4 (emphasis added).] As described above, the allegedly tortious conduct occurred in Saudi Arabia and concerned the Plaintiff's actions in Saudi Arabia. Accordingly, the Plaintiff's claim does not "arise from" Shaw Arabia's contacts with or activities in Ohio.

Finally, the exercise of personal jurisdiction over Shaw Arabia in this case would not be reasonable. The final prong of the Sixth Circuit's test requires that "the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *S. Mach. Co.,* 401 F.2d at 381. In this case, the burden on Shaw Arabia, a Saudi Arabian corporation with no presence in Ohio, of defending this case in this Court would be great. This burden is not outweighed by the interest of Ohio in obtaining relief for the Plaintiff, an Ohio resident.

The Court finds that the Plaintiff is unable to satisfy any part of the Sixth Circuit's test for exercising personal jurisdiction over an out-of-state defendant. The Court therefore grants Shaw Arabia's motion to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2).

## IV. Conclusion

For the foregoing reasons, the Court **GRANTS** Defendant Shaw Arabia's motion to dismiss. [Doc. 94.]

IT IS SO ORDERED.

Dated: May 13, 2010

s/ *James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE