UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                            :
ROBIN KIRK,                                 :
                                            :
                                            :        CASE NO. 1:09-cv-1405
              Plaintiff,                     :
                                            :
vs.                                         :        OPINION & ORDER
                                            :        [Resolving Doc. No. 96]
SHAW ENVIRONMENTAL, INC., *et al.,*         :
                                            :
              Defendants.                    :
                                            :
-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

        Defendant Shaw Environmental, Inc. ("Shaw Environmental") has moved this Court for

summary judgment. [Doc. 96.]  The Plaintiff opposes Shaw Environmental's motion.  [Docs. 131,

135.]  Shaw Environmental has replied.  [Doc. 138.]

        For the following reasons, the Court **GRANTS** Shaw Environmental's motion for summary

judgment and dismisses all claims against Shaw Environmental.

## I. Background & Procedural History

        Plaintiff Robin Kirk brings this suit against his former employer, Shaw Environmental, Inc.

Kirk claims that Shaw Environmental fired him after he reported potential violations of the Foreign

Corrupt Practices Act ("FCPA") and that this violated public policy.  He also says Shaw took adverse

Case No. 1:09-cv-1405
Gwin, J.

employment actions against him based upon a perceived disability. [Doc. 35 at 14-17.][1/]

Plaintiff Kirk worked for Defendant Shaw Environmental from 2001[2/] until Shaw sacked him in June 2008. [Doc. 96-2, Kirk Dep. at 26-35, 88-92, 173-74.]  In March 2005, the Plaintiff began working on a project that became Defendant Shaw Arabia Limited ("Shaw Arabia"), a joint venture between three entities: Shaw Environmental, Inc. International ("SEI International"), a subsidiary of Defendant The Shaw Group; Pan Environmental Services Co. Ltd. ("PAN"), a Saudi Arabian company represented in the Shaw Arabia venture by Defendant F. Steven Medeiros; and Defendant Projects International Equities, LLC.[3/]  [Id. at 3-4.]  Throughout Plaintiff Kirk's involvement in the Shaw Arabia venture, General Mike DeLong, then a Shaw employee, served as a supervisor to Kirk. [Id. at 113-15.]

In preparation for his travel to Saudi Arabia, Plaintiff Kirk underwent medical testing in late 2005.  [Doc. 96-2, Kirk Dep. at 73.]  As a result of this testing, Kirk learned he had chronic lymphocytic leukemia.  [Id. at 73-76.]  Kirk was nonetheless cleared for foreign assignment. [Id. at 79.]

On May 27, 2006, Plaintiff Kirk relocated to Riyadh, Saudi Arabia, and in approximately September 2006, Medeiros and DeLong asked Kirk to become the General Manager of Shaw Arabia. [Doc. 96-2, Kirk Dep. at 91-92, 108-111.]  In Saudi Arabia, Plaintiff Kirk worked to prepare proposals on behalf of Shaw Arabia for, *inter alia*, the Saudi Arabian Presidency of Meteorology and

---

[1/] In his Amended Complaint, Kirk also alleges that dismissed Defendants The Shaw Group, the parent company of Shaw Environmental; Projects International Equities, LLC; Shaw Arabia Limited; and F. Steven Medeiros tortiously interfered with his employment relationship with Shaw Environmental.  [Doc. 35 at 16.]

[2/] Kirk actually began his employment in 2001 with corporate entity that Shaw later acquired. [Doc. 96-2, Kirk Dep. at 26-30.]

[3/] This Court earlier dismissed claims against Defendants Shaw Arabia Limited, The Shaw Group, F. Steven Medeiros, and Projects International Equities, LLC.  [*See* Docs. 88, 106, 140, 142.]

Case No. 1:09-cv-1405
Gwin, J.

Environment ("PME"), a Saudi government agency headed by Prince Turki Bin Nasser Bin Abdulaziz ("Prince Turki"), a member of the Saudi Royal family.  [Doc. 135-2, Kirk Decl. at 2.]  Prince Turki was responsible for deciding to whom to award PME contracts. [*Id.*]

The Shaw Arabia venture had trouble making money and in the summer of 2007, Shaw executives became concerned its profitability.  [Doc. 135-20, Thompson Dep. at 19-21, 25-33.]  In approximately July 2007, Patrick Thompson, then-Chief Operating Officer of Shaw Environmental & Infrastructure, Inc. ("Shaw E&I"), Ron Oakley, then-President of Shaw E&I, and George Bevan, then-Executive Vice President of Shaw E&I, met with Kirk and DeLong to review Shaw Arabia's financials and activities.  [*Id.* at 25; Doc. 135-19, Bevan Dep. at 10-12, 15.]  While Thompson was inclined to immediately shut down Shaw Arabia, after he Oakley, and Bevan had a discussion, they collectively decided to continue the venture and review it again in six months.  [Doc. 135-20, Thompson Dep. at 33-35.]

According to the Plaintiff, after this July 2007 decision to continue the venture for six months and sometime in the Fall of 2007, Medeiros told him that Prince Turki was an investor in Shaw Arabia. [Doc. 96-2, Kirk Dep. at 121-23.]  If Turki was an investor in the Shaw Arabia joint venture, he would be invested in a proposal to the Saudi government that he would have authority to select.  Plaintiff Kirk says that he informed his supervisor at the time, Al Husak, of Prince Turki's financial interest in Shaw Arabia. [Doc. 96-2, Kirk Dep. at 142-144.]  Husak says that he does not remember having this conversation with Kirk.  [Doc. 96-15, Husak Decl. at 15.]

In November 2007, Malcolm Jarrell replaced Husak as Kirk's supervisor at Shaw Environmental.  [Doc. 96-2, Kirk Dep. at 115-16.]  Jarrell officially began supervising Shaw Arabia in September 2007; however, he asked Husak to continue to have a role in overseeing Shaw Arabia

Case No. 1:09-cv-1405
Gwin, J.

through the end of the year to allow Jarrell to "get up to speed with the new assignment." [Doc. 96-7, Jarrell Dep. at 13-14, 18.] Jarrell was then Vice President of Technology and Ventures at Shaw E&I. [*Id.* at 103.] The Technology and Ventures group included projects that were viewed as bad investments because they were not producing a profit. [Doc. 135-20, Thompson Dep. at 59.] Thompson and Jarrell were responsible for either fixing, selling, or closing these under-performing businesses. [*Id.*; Doc. 96-2, Kirk Dep. at 197-98.]

By December 2007, Kirk was having disagreements with Medeiros regarding the activities and operation of the joint venture. [Doc. 96-2, Kirk Dep. at 216, 238-41; Doc. 96-7, Jarrell Dep. at 14-15.] On December, 12, 2007 Plaintiff Kirk returned to the United States for vacation. [Doc. 96-2, Kirk Dep. at 122; Doc. 135-2, Kirk Decl. at 5.] Upon his arrival, DeLong informed him that he was no longer the General Manager of Shaw Arabia. [Doc. 96-2, Kirk Dep. at 298-99.] Kirk did not return to Saudi Arabia.

Following his removal from Saudi Arabia, Kirk continued to work on Shaw Arabia projects from the United States. [Doc. 96-2, Kirk Dep. at 218-19.] Kirk also worked with Jarrell on the United Nations Compensation Commission ("UNCC") proposal for Kuwait and a proposal involving a project in Ecuador. [*Id.* at 150-151, 218-220.] While Kirk was in Houston working on the UNCC Kuwait project in January 2008, he told his supervisor, Jarrell, that Prince Turki was an investor in the joint venture. [Doc. 96-2, Kirk Dep. at 150-52; Doc. 96-7, Jarrell Dep. at 24-28.] Although he was at first not concerned by Kirk's statement, a couple of weeks later Jarrell reported the allegations to Bevan and to Kerry David, Chief Compliance Officer for the Shaw Group. [Doc. 96-7, Jarrell Dep. at 33-35.] David then initiated a due diligence investigation into the allegations. [*Id.* at 38-40, 159-160; Doc. 135- 24, David Dep.]

-4-

Case No. 1:09-cv-1405
Gwin, J.

While back in the United States and in March 2008, Harry Dravecky, District Manager for Shaw E&I's Mid-Atlantic division, contacted the Plaintiff regarding a potential job with his team. [Doc. 96-2, Kirk Dep. at 188; Doc. 135-23, Dravecky Dep. at 9-10; Doc. 135-14.] Kirk says that Dravecky said he had an open position for him and scheduled a meeting with him for the following week. [Doc. 96-2 Kirk Dep. at 188.] However, the in-person meeting never happened, and Dravecky did not respond to Kirk's subsequent emails. [*Id.* at 189.] In explaining why he did not offer Kirk a job, Dravecky says that, as a result of his conversation with Kirk, he did not believe he could justify creating a position for Kirk in his group from a profitability standpoint. [Doc. 93-4, Dravecky Dep. at 13-17.]

On or about March 17, 2008, Jarrell called the Plaintiff and informed him that The Shaw Group had no jobs available anywhere in the organization for Kirk, and that Shaw Environmental would be terminating his employment. [Doc. 96-2, Kirk Dep. at 174-75; Doc. 96-7, Jarrell Dep. at 117-18; *see also* Doc. 96-13.] In response, Kirk requested a medical furlough and on March 18, 2008, Shaw placed Kirk on a ninety-day unpaid furlough. [Doc. 96-13; Doc. 96-2, Kirk Dep. at 228-231.] On or about June 16, 2008, Shaw Environmental terminated the Plaintiff's employment. [Doc. 35 at 14; Doc. 16 at 8; *see also* Doc. 96-13.]

In May 2009, Plaintiff Kirk sued the Shaw Defendants in the Cuyahoga County Court of Common Pleas. [Doc. 1-1.] The Defendants removed the case to this Court on June 19, 2009. [Doc. 1.]

In his Complaint, Kirk alleges that Shaw Environmental wrongfully terminated him in violation of public policy due to his reporting potential violations of the Foreign Corrupt Practices Act ("FCPA") and that the Shaw Group tortiously interfered with his employment relationship with

-5-

Case No. 1:09-cv-1405
Gwin, J.

Shaw Environmental. [Doc. 1-1 at 14-17.]

On October 14, 2009, Plaintiff Kirk amended his Complaint, adding claims that Shaw Environmental discriminated against him based on a perceived disability, his chronic lymphocytic leukemia, and joining Defendants Medeiros, Shaw Arabia, and Projects International, who Kirk alleges tortiously interfered with his employment relationship with Shaw. The Court has dismissed the Shaw Group, Shaw Arabia, Projects International, and Medeiros as parties to this action.[4/] [Docs. 88, 106, 140, 142.] Shaw Environmental is the only remaining Defendant in this case.

On February 8, 2010, Shaw Environmental moved for summary judgment on all claims the Plaintiff alleges against it in his Amended Complaint. [Doc. 96.] The Plaintiff opposes the motion. [Docs. 131, 135.] Shaw Environmental has replied. [Doc. 138.]

## II. Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party has the initial burden of showing the absence of a genuine

---

[4/]The Shaw Defendants moved to dismiss the original Complaint on July 27, 2009. [Doc. 15.] After the Court granted multiple motions for extensions of time, the Plaintiff filed his opposition to the Shaw Defendants' motion to dismiss on March 1, 2010. [Doc. 111.] On March 31, 2010, the Court granted the Defendants' motion in part, dismissing the Plaintiff's claim for tortious interference against the Shaw Group, and dismissing the Shaw Group as a party to the suit. [Doc. 140.] The Court denied the motion with respect to the Plaintiff's claim for wrongful termination in violation of Ohio public policy against Shaw Environmental. [*Id.*; *see also* Part III.B, *infra*.]

Following the issuance of a Show Cause Order [Doc. 98], the Court dismissed Defendant Medeiros without prejudice for the Plaintiff's failure to execute service upon Medeiros [Doc. 106].

The Court dismissed Projects International pursuant to a stipulated dismissal between Kirk and Projects International on February 5, 2010. [Doc. 88.]

The Court granted Shaw Arabia's motion to dismiss for lack of personal jurisdiction on May 13, 2010. [Doc. 142.]

.

Case No. 1:09-cv-1405
Gwin, J.

issue of material fact as to an essential element of the non-moving party's case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  "A fact is material if its resolution will affect the outcome of the lawsuit."  *Martingale, LLC v. City of Louisville,* 361 F.3d 297, 301 (6th Cir. 2004) (citing *Daughenbaugh v. City of Tiffin,* 150 F.3d 594, 597 (6th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).  However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  It is not sufficient for the nonmoving party merely to show that there is some existence of doubt as to the material facts.  *See id.* at 586.  Nor can the nonmoving party rely upon the mere allegations or denials of its pleadings.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party. *Thomas v. Cohen,* 453 F.3d 657, 660 (6th Cir. 2004) (citations omitted).  "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence that makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987) (citing *First Nat'l Bank of*

-7-

Case No. 1:09-cv-1405
Gwin, J.

*Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288-89 (1968)).  Ultimately the Court must decide "whether the evidence presents sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Martingale,* 361 F.3d at 301 (citing *Terry Barr Sales Agency, Inc. v. All-Lock Co., Inc.,* 96 F.3d 174, 178 (6th Cir. 1996)) (internal quotations omitted).

### III. Analysis

**A. Choice of Law**

The Defendant first argues that the Court should apply Louisiana law, not Ohio law to the Plaintiff's claims.[5] The Plaintiff argues that Ohio law should apply. .

A federal court sitting in diversity jurisdiction applies the conflict of laws rules of the state in which it sits.  *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487 (1941); *Macurdy v. Sikov & Love, P.A.,* 894 F.2d 818, 820 (6th Cir. 1990).   In Ohio, however, "[t]he resort to principles of conflict of laws is necessary only if there is an actual conflict between local law and the law of another jurisdiction.  The party asserting the application of the foreign law has the initial burden to demonstrate such a conflict with the forum state's law, and local law applies if a party alleging that the law of a foreign jurisdiction applies fails to demonstrate a conflict between local law and the law of that jurisdiction." *Gouge v. BAX Global, Inc.,* 252 F. Supp. 2d 509, 521-522 (N.D. Ohio 2003) (Quoting 16 Ohio Jur.3d Conflict of Laws § 1).  Here, the Defendant, seeking application of Louisiana law, has presented evidence that an actual conflict exists.  While Ohio recognizes a common law claim for a wrongful discharge in violation of public policy, *see Greeley v. Miami*

---

[5] The Shaw Defendants make this argument in the Shaw Group's motion for summary judgment. [Doc. 93-1.] Although th Court denied this motion as moot, it will consider the arguments considering choice of law because Shaw Environmental incorporated these arguments by reference into its summary judgment motion. [*See* Doc. 96-1 at 12; Doc. 140 at 15-16.]

Case No. 1:09-cv-1405
Gwin, J.

*Valley Maintenance Contractors*, 551 N.E.2d 981 (1990),  Louisiana does not, *see Godfrey v. AAB Amusement Co., Inc.*, 2005 WL 2467773, at \*10 (W.D. La. Oct. 6, 2003)("[W]rongful termination in violation of public policy is not a cause of action recognized under Louisiana law in the absence of a statutory exception.").  The Court therefore finds that this case presents a conflicts-of-law question.

Whether a cause of action sounds in tort or contract is a matter of procedure determined by the law of the forum.  *Gouge*, 252 F. Supp. 2d at 521 (citing *Mahalsky v. Salem Tool Co.*, 461 F.2d 581, 583-84 (6th Cir. 1972)).  Ohio treats claims for wrongful discharge in violation of public policy and employment discrimination as tort claims.  *See Greeley v. Miami Valley Maintenance Contractors*, 551 N.E.2d 981 (1990); *Reilly v. Alcan Aluminum Corp.*, 1999 WL 313879 (6th Cir. May 5, 1999); *Hoyt v. Nationwide Mutual Ins. Co.*, 2005 WL 3220192, at \*18 (Ohio Ct. App. Dec. 1, 2005).

The Ohio Supreme Court has directed that courts in Ohio should analyze choice-of-law issues by using the Restatement (Second) of Conflicts.  *Macurdy*, 894 F.3d at 820; *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 341-42 (Ohio 1984).     In considering a choice-of-law issue in a tort action, the Ohio Supreme Court says that a court must begin with Restatement Section 146.  *Gouge*, 252 F. Supp. 2d at 521-522 (citing *Morgan*, 474 N.E.2d at 342).  Pursuant to this Section, a presumption is created that the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit.  *Id.*  To determine the state with the most significant relationship, the court must then consider the general principles set forth in Section 145.  *Id.*  Section 145 provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most

-9-

Case No. 1:09-cv-1405
Gwin, J.

> significant relationship to the occurrence and the parties under the principles stated in [Restatement] § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6[6/] to determine the law applicable to an issue include:
>
>> (a) the place where the injury occurred,
>>
>> (b) the place where the conduct causing the injury occurred,
>>
>> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>>
>> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (1971).

In this case, the first Section 145 factor, the place where the injury occurred, weighs in favor of applying Ohio law.  Malcolm Jarrell called the Plaintiff at his Brecksville, Ohio office to inform him that he was being terminated. [Doc. 134-1, Kirk Dep. at 174.]  After he returned from Saudi Arabia, the Plaintiff was primarily residing in Ohio and working in Shaw's Brecksville, Ohio office. [*Id.* at 151, 219-220.]  Accordingly, the injury to the Plaintiff occurred in Ohio.  *See Reilly*, 1999 WL 313879, at *3 (place where injury occurred in wrongful termination case is state where employee resided and where office out of which employee's work was based immediately prior to and at the

---

[6/] The general principles of conflict of laws provided in Section 6 of the Restatement are:
  (a) the needs of the interstate and international systems,
  (b) the relevant policies of the forum,
  (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
  (d) the protection of justified expectations,
  (e) the basic policies underlying the particular field of law,
  (f) certainty, predictability and uniformity of result, and
  (g) ease in the determination and application of the law to be applied.
Restatement (Second) of Conflict of Laws § 6 (1971).

Case No. 1:09-cv-1405
Gwin, J.

time of his termination is located).

The second factor, the place where the conduct causing the injury occurred, weighs in favor of the application of Louisiana law.  The Defendant alleges that the decision to terminate Kirk was made by Shaw Environmental employees at Shaw's headquarters in Baton Rouge, Louisiana, as part of a company-wide reduction in force.  According to the Defendant, the Plaintiff was included in the reduction-in-force because he was under-utilized following his return from Saudi Arabia. [Doc. 93-1 at 4-7, 10-11.]  The Plaintiff claims that Shaw Environmental terminated him in retaliation for statements he made concerning potential violations of the Foreign Corrupt Practices Act and because of his disability.  Thus, under either theory of the case, Louisiana is "the place where the conduct causing the injury occurred" or perhaps, Saudi Arabia–.  Defendant decided to fire Plaintiff outside Ohio, regardless of whether this decision was based upon the reduction-in-force or one or more of the illegitimate reasons the Plaintiff advances.  *See Reilly*, 1999 WL 313879, at *3 (in determining place where injury occurred in wrongful discharge and discrimination case, court considers state from which the "dismissal decision . . . emanate[d]").  Accordingly, this factor favors the application of Louisiana law.

The third factor, the parties' residences, does not weigh in favor of the application of either Louisiana or Ohio law.  The Plaintiff is a resident of Ohio, although he currently lives and works in Vietnam.  The Defendant incorporated under the laws of Louisiana, and has its primary place of business in Louisiana.  However, the Defendant apparently does business in Ohio, as it admits that it employed the Plaintiff in Ohio.  Accordingly, this factor does not favor either Ohio or Louisiana law.

Finally, the fourth factor, where the parties' relationship was centered, favors the application

-11-

Case No. 1:09-cv-1405
Gwin, J.

of Ohio law.  The Plaintiff began his employment with a predecessor of Shaw Environmental in the company's Brecksville, Ohio office in 2001. [Doc. 93-2, Kirk Dep. at 26-40.] The Plaintiff was based in Shaw's Brecksville, Ohio and Cincinnati, Ohio offices until Shaw assigned him to the Shaw Arabia project, resulting in his temporary relocation to Saudi Arabia in May 2006.  [*Id.* at 40, 88-92; *see also* Doc. 135-6.] During his career with Shaw Environmental, the Plaintiff was never based out of Louisiana.  Accordingly, the parties' relationship was centered in Ohio, and, to a lesser extent, Saudi Arabia, and not in Louisiana.  This factor favors the application of Ohio law. *See Sholes v. Agency Rent-A-Car, Inc.*, 601 N.E.2d 634, 637 (Ohio Ct. App. 1991)(holding that relationship between parties centered in Texas, where employee worked, not Ohio, where employer's corporate headquarters located).

Considering all of the Section 145 factors, the Court finds that Ohio has the most significant relationship to this case and thus that Ohio law should govern the Plaintiff's claims.  The Restatement § 6 factors do not require a different result.  Accordingly, this Court will apply Ohio law to Plaintiff's claims for wrongful termination in violation of public policy and discriminatory termination based on disability.

### B. Wrongful Termination in Violation of Public Policy Claim

In its motion for summary judgment, Defendant Shaw Environmental claims that it is entitled to summary judgment on Plaintiff's Kirk's claim that he was wrongfully discharged in violation of Ohio public policy.  Because no genuine issues of material fact exist with respect to three of the four elements of Kirk's claim, and because Kirk must satisfy all four elements to make out his claim, *Hill v. Mr. Money Fin. Co. & First Citizens Banc Corp.*, 309 F. App'x 950, 965 (6th Cir. 2009), the Court agrees with the Defendant and grants summary judgment in its favor with respect to Kirk's

Case No. 1:09-cv-1405
Gwin, J.

public policy claim.

In an exception to the general rule of employment at will, the Ohio Supreme Court has recognized a tort for wrongful discharge in violation of public policy. *Greeley v. Miami Valley Contrs., Inc.*, 551 N.E.2d 981 (1990). To establish his claim of wrongful discharge in violation of Ohio public policy, Plaintiff Kirk must demonstrate that: (1) a "clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity* element);" (2) "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element);" (3) the "plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element);" and (4) the "employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)." *Collins v. Rizkana*, 652 N.E.2d 653, 657-58 (Ohio 1995) (citations omitted). The Ohio Supreme Court has said that "the clarity and jeopardy elements . . . are questions of law to be determined by the court," while "'the jury decides factual issues relating to causation and overriding justification.'" *Id.* at 658 (citation omitted). However, as the Sixth Circuit has recognized, "[t]his language from *Collins* is very general and leaves a lot of room for interpretation." *Jermer v. Seimens Energy & Automation, Inc.*, 395 F.3d 655, 656 (6th Cir. 2005) (further noting that: "The meaning of these four elements for this new Ohio tort has not yet gained the level of clarity or certainty that allows predictive outcomes.")

*Clarity and Jeopardy Elements*

This Court previously considered the clarity and jeopardy elements of Kirk's wrongful termination in violation of public policy claim in ruling on the Defendants' motion to dismiss. [Doc. 140.] In denying Shaw Environmental's motion to dismiss this claim, this Court held that the FCPA

-13-

Case No. 1:09-cv-1405
Gwin, J.

sufficiently states the public policy of Ohio to protect the public against American companies'

bribing of foreign officials to satisfy the clarity element. [*Id.* at 9-10.] The Court further held that the

Plaintiff's claim is not preempted by the Ohio Whistleblower Statute, Ohio Rev. Code § 4113.52.

[*Id.* at 10.] Thus, the Court concluded, the Plaintiff's claim sufficiently satisfied the clarity element.

[*Id.*]

In considering the jeopardy element, the Court held that, because the FCPA does not provide

a private right of action, it did not provide the same remedies for dismissed employees as a public

policy tort would.  [*Id.* at 11-12.]  The Court further held that, accepting as true all of the allegations

contained in the Plaintiff's Complaint and drawing all reasonable inferences in his favor, the Plaintiff

adequately pled his reporting of the alleged FCPA violations, and thus sufficiently satisfied the

jeopardy prong, to survive a motion to dismiss.  [*Id.* at 12.]

Summary judgment presents a different issue than the earlier motion to dismiss.  In reviewing

the evidence before it under the appropriate standard for summary judgment, the Court concludes

that the Plaintiff has failed to establish the jeopardy prong as a matter of law.  In *Jermer v. Siemens*

*Energy & Automation, Inc.*, the Sixth Circuit explained that to establish the  jeopardy element:

> [C]omplaining employees do not have to be certain that the employer's conduct is
> illegal or cite a particular law that the employer has broken, [but] the employee must
> at least give the employer clear notice that the employee's complaint is connected to
> a governmental policy.  It must be sufficiently clear from the employee's statements
> that he is invoking governmental policy that a reasonable employer would understand
> that the employee relies on the policy as the basis for his complaint.

395 F.3d 655, 656 (6th Cir. 2005).  In *Greeley*, the Ohio Supreme Court granted employees who act

as "enforcers" of public policy special protection when they act in a public capacity.  *Id.* at 659.

Accordingly, "employers must received notice that they are no longer dealing solely with an at-will

employee, but with someone who is vindicating a governmental policy. . . .  Even though an

Case No. 1:09-cv-1405
Gwin, J.

employee need not cite any specific statute or law, his statements must indicate to a reasonable

employer that he is invoking governmental policy in support of, or as the basis for, his complaints."

*Id.*; *see also* *Avery v. Joint Twp. Dist. Mem'l Hosp.*, 504 F. Supp. 2d 248, 257-58 (plaintiff

employee's reporting of co-worker's conduct did not satisfy jeopardy element where plaintiff did not

suggest that co-worker's conduct constituted malfeasance or violated any law or policy).

Here, Plaintiff Kirk does not satisfy the jeopardy element because he did not make clear to

his employer that he was invoking public policies as the basis for his complaints.  Kirk first reported

that Prince Turki might have a financial interest in Shaw Arabia sometime between October-

December 2007, to his supervisor at the time, Al Husak. [Doc. 96-2, Kirk Dep. at 140-41.] In

January 2008, Plaintiff Kirk reported that Prince Turki was an investor in the joint venture to his new

supervisor, Malcolm Jarrell. [*Id.* at 150-52; Doc. 96-7, Jarrell Dep. at 24-25.]  In neither of these

conversations did Plaintiff Kirk say that he was concerned about a potential FCPA violation, or a

violation of any law or policy. [Doc. 96-2, Kirk Dep. at 149-50, 154-56.] In fact, Plaintiff Kirk

testified that he didn't recall expressing any concern about Prince Turki's involvement when he

spoke to Husak and Jarrell. [*Id.* at 144, 155.][7/]  Jarrell similarly testified that Kirk did not raise the

---

[7/]Kirk testified:

Q    Did you express to Mr. Husak that you had some concern regarding this relationship?

A.    I don't recall that I did at that time.

Q    Did you present it to Mr. Husak as a positive?

A    I recall It only being a point of conversation with many other points.

* * *

Q    Q Did you tell Mr. Jarrell that there may be a violation of the Foreign Corrupt Practices Act?

A.    No.

(continued...)

Case No. 1:09-cv-1405
Gwin, J.

issue of Prince Turki's financial interest as a matter of concern.  [Doc. 96-7, Jarrell Dep. at 27-29,

32-33.] Jarrell said he only became concerned about potential legal issues after a later conversation

in which a friend brought up the Foreign Corrupt Practices Act. [*Id.* at 29-30.]  Kirk did not report

his knowledge regarding the Prince's potential financial interest in the joint venture to Shaw's

compliance department, or to any law enforcement or other government agency. [Doc. 96-2, Kirk

Dep. at 155-56, 168.]

Accordingly, the evidence shows that Kirk never explicitly stated or even suggested that he

thought that Prince Turki's alleged ownership interest in Shaw Arabia violated the FCPA or any

other law or policy.  Kirk's statements to his supervisors were decidedly vague and insufficient to

put Defendant Shaw Environmental on notice that Kirk was invoking a governmental policy through

his comments.  *See Avery*, 504 F. Supp. 2d at 257-58.  Accordingly, Kirk has failed to satisfy the

jeopardy element of his wrongful termination in violation of public policy claim.  This finding alone

is sufficient for the Court to grant summary judgment in Shaw Environmental's favor on this claim.

---

[7]/(...continued)

Q.    Did you tell Mr. Jarrell you were afraid the joint venture or participants in it might be doing
      something illegal?

A     No.

Q     Did you indicate in any way to Mr. Jarrell that you had a concern about the alleged
      ownership interest?

A     No.

Q     And you don't recall Mr. Jarrell's response, if any, to you?

A     I don't think there was a reaction.

Q     So other than your conversations with Mr. Husak and with Mr. Jarrell, did you ever report
      this Prince Turki ownership interest issue to anyone within Shaw?

A     No.

Kirk Dep. at 144, 155.

-16-

Case No. 1:09-cv-1405
Gwin, J.

See *Jermer*, 395 F.3d at 660; *Hill*, 309 F. App'x at 965.

*Causation and Overriding Business Justification Element*s

Even assuming that Plaintiff Kirk could satisfy both the clarity and jeopardy elements, his claim fails because he cannot establish either the causation or overriding business justification elements. While the Ohio Supreme Court has said that "the jury decides factual issues relating to causation and overriding justification," *Collins*, 625 N.E.2d at 658, courts routinely grant summary judgment when the plaintiff fails to raise an issue of material fact with respect to either element. *See, e.g.*, *McDermott v. Continental Airlines, Inc.*, 229 F. App'x 552, 554-59 (6th Cir. 2009); *Avery v. Joint Twp. Dist. Mem'l Hosp.*, 540 F. Supp. 2d 248, 258-59 (N.D. Ohio 2007); *Zeman v. Goodrich*, 2005 WL 1668498, at *22-24 (N.D. Ohio July 16, 2005).

The Defendant argues that the Plaintiff fails to establish the causation element as he presents no evidence that he was dismissed because he reported Prince Turki's alleged ownership interest in Shaw Arabia. [Doc. 96-1 at 16-17.] Shaw Environmental says that the undisputed evidence shows that Jarrell fired the Plaintiff as part of a company-wide reduction in force. [*Id.*] The Defendants further argue that the Plaintiff cannot rely solely on temporal proximity to prove causation. [*Id.* at 17.] The Defendant argues that Kirk has similarly failed to establish the overriding justification element because Shaw Environmental presented evidence that it terminated Kirk as part of a reduction in force and Kirk presents no evidence that this justification is pretextual. [*Id.* at 18.]

The Plaintiff does not address the specific arguments the Defendant raises with respect to the causation and overriding justification elements. Instead, the Plaintiff responds to both of these specific issues with a total of three sentences of argument, saying that "[g]iven the evidence presented by Plaintiff there are clear and genuine issues of material fact on the issue[s] of causation

-17-

Case No. 1:09-cv-1405
Gwin, J.

. . . [and] Shaw's justification for terminating Plaintiff." [Doc. 135-1 at 19.] The Plaintiff does not specify which of the disputed facts are material, or how most of the disputed facts are relevant to his claim. For the following reasons, the Court concludes that there are no issues of material fact with respect to the causation and overriding justification elements, and that the Defendant is entitled to summary judgment for this reason as well.

The Plaintiff claims that "he was terminated from his job because he informed his superiors that Prince Turki of Saudi Arabia was an investor in a joint venture known as Shaw Arabia." [Doc. 135-1 at 1.] The Plaintiff does not present direct evidence that his termination resulted from any statement he made regarding Turki's possible ownership interest in Shaw Arabia. A jury cannot infer causation based on the bare fact that Kirk reported the potentially illegal activity to his supervisors. *See McDermott*, 339 F. App'x at 557. Kirk testified that he believed he was terminated because of the information he knew about the joint venture. [Doc. 96-2, Kirk Dep. at 118.] "But unelaborated and unsubstantiated conclusions, whether offered by the employee himself or by a co-worker who did not participate in the decision making process, do not create the necessary causal link." *McDermott*, 339 F. App'x at 557 (citing *Atkinson v. Akron Bd. of Educ.*, 2006 WL 551551, at *8, (Ohio Ct. App. Mar. 8, 2006); *Haley v. Gen. Elec. Co.*, 3 F. App'x 240, 248 (6th Cir. 2001)).

Further, Kirk cannot rely solely on temporal proximity to establish causation. The Sixth Circuit has held that temporal proximity alone is generally insufficient to support an inference of retaliatory termination. *See McDermott*, 339 F. App'x at 557, citing *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008)("Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a

-18-

Case No. 1:09-cv-1405
Gwin, J.

prima facie case of retaliation.  But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality.")  Approximately three to five months passed between Plaintiff's initial report of Prince Turki's activity to Husak in October-December of 2007 and his termination in March 2008.  Jarrell did not fire the Plaintiff until two months after the Plaintiff reported the potential FCPA violation to him in January 2008.  The Plaintiff's "reports" were not sufficiently "very close" in time to his termination to support an inference of causation.  *See McDermott*, 339 F. App'x at 557 (no inference of causation where employee terminated four months after protected activity);  *Mickey*, 516 F.3d at 525 (suggesting that to infer causation, employer must retaliate "swiftly and immediately upon learning of protected activity"); *see also Avery*, 504 F. Supp. 2d at 258-59.   The Plaintiff does not present evidence of any additional retaliatory behavior against him by any Shaw Environmental employee after he reported the Prince Turki allegations to Husak and Jarrell that would support an inference of causation.[8]

Moreover, even if the Plaintiff could establish a causal link between his comments to Husak and Jarrell and his discharge, the Plaintiff has failed to raise a genuine issue of material fact regarding his claim that Shaw Environmental lacked an overriding legitimate business justification–namely, the Plaintiff's inclusion in a company-wide reduction in force due to his lack of work and underutilization–for its employment decision.  Jarrell testified that he fired the Plaintiff

---

[8]Plaintiff's removal as General Manager of Shaw Arabia is not evidence of retaliation by Shaw Environmental, because, as the Plaintiff admits, Medeiros was the one who decided to remove him from this position. [Doc. 135-1 at 9.] Moreover, Kirk's belief that someone at the Shaw Group interfered with his potential job opportunity with Harry Dravecky's group is not evidence of retaliatory behavior, because Plaintiff Kirk cannot point to a single individual who he believes interfered or described how he believes that person interfered [Doc. 96-2 at 191], and because, as described below, this allegation is unsupported by the undisputed evidence before the Court.

Case No. 1:09-cv-1405
Gwin, J.

as part of a reduction in force due to the Plaintiff's lack of work. [Doc. 96-7, Jarrell Dep. at 117-18.]

The Defendant has presented uncontradicted evidence that beginning in 2007 and continuing through 2008, Shaw Environmental underwent a restructuring that resulted in a large, multiple-round, company-wide reduction in force. [Doc. 93-5, Thompson Dep. at 20-21, 84-85; Doc. 96-24.] Jarrell and Thompson both testified that as of August-September of 2007, Kirk appeared on a list of potential candidates to be eliminated as part of a reduction in force due to his not meeting certain utilization and billing targets and because of his high compensation. [Doc. 96-7, Jarrell Dep. at 117-20; Doc. 96-9, Thompson Dep. at 43-44.]  Thompson testified that over the course of one year, the Shaw Group let go sixty percent of the individuals appearing on this "highly compensated restructuring list." [Doc. 96-9, Thompson Dep. at 41-44.] Thompson further testified that Shaw Environmental underwent a third round of layoffs during the time period in which it terminated the Plaintiff's employment. [Doc. 93-5, Thompson Dep. at 84-85.]  Moreover, Shaw Environmental sent the Plaintiff a letter detailing the terms of his furlough, which indicated that the Plaintiff was being discharged as part of a reduction in force. [Doc. 96-13.]

The Sixth Circuit has suggested that, once an employer presents a legitimate justification for its discharge of an employee, a plaintiff must show that en employer's offered nondiscriminatory reason for the termination is pretextual. *See* *McDermott*, 339 F. App'x at 555, 557; *Godfredson v. Hess & Clark*, 173 F.3d 365, 375 (6th Cir. 1999). "An employee can show pretext by offering evidence that the employer's proffered reason had no basis in fact, did not actually motivate its decision, or was never used in the past to discharge an employee." *Godfredson*, 173 F.3d at 373 (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 805-06 (6th Cir. 1998).

While the Plaintiff does not make any explicit argument regarding pretext, he seems to

-20-

Case No. 1:09-cv-1405
Gwin, J.

implicitly argue that a material issue of fact exists whether the Defendant was motivated by Kirk's

lack of work and underutilization.  .[9/] The Plaintiff says that Harry Dravecky offered him a position

on his team.  While the Plaintiff does not make the argument, he implicitly suggests that the

contention that he did not have work at the time of his termination is therefore false. [*See* Doc. 135-1

at 12-15.]

However, the undisputed evidence before the Court shows that Dravecky had not made a

formal offer of a position to the Plaintiff, that he did not have an open position to fill on his team but

rather would have had to create a position for the Plaintiff, and that Dravecky was forced to lay off

several members of his own team during this same time period. [Doc. 93-4, Dravecky Dep. at 11-16,

25-27.]  While the Plaintiff initially testified that Dravecky said he had an open position for him

[Doc. 96-2, Kirk Dep. at 186-87], he later testified that when he spoke with Dravecky, Dravecky told

him he had an "opportunity" for the Plaintiff and that they set up another meeting to discuss the

potential opportunity.  [*Id.* at 188.]  The Plaintiff's correspondence with Dravecky following their

conversation suggests that he understood that a formal position did not yet exist and that the details

of the new position had not yet been worked out.  [Doc. 135-16, Email from R. Kirk to H. Dravecky

dated March 13, 2008.]  The Plaintiff's argument that Dravecky "lied" about his and the Plaintiff's

conversation is unsupported by the evidence. [*See* Doc. 135-1 at 15.] [10/]Moreover, it is undisputed

that Plaintiff was not working for Dravecky when Jarrell informed him that he was being laid off.

---

[9/]Kirk does not suggest and the evidence refutes any claim that Shaw Environmental never used a reduction of force in the past as a justification for terminating an employee. [*See* Doc. 96-24.]

[10/] Plaintiff's suggestion that Jarrell lied during his deposition, and that his deposition is therefore untrustworthy, is similarly unsupported by the evidence. [*See* Doc. 135-1 at 11.] Contrary to the Plaintiff's assertions, Jarrell admitted early on during his deposition that Kirk told him that Prince Turki was an investor in the joint venture. [Doc. 96-7, Jarrell Dep. at 24-28.]

Case No. 1:09-cv-1405
Gwin, J.

[*See* Doc. 96-2, Plaintiff Dep. at 174, 187-88.] Accordingly, the Plaintiff does not create an issue of material fact as to whether he had work and was underutilized at the time of his discharge.

The Plaintiff's primary argument–although again, he does not make it explicitly–seems to be that the Plaintiff's lack of work and the company-wide reduction in force did not actually motivate the Plaintiff's termination; rather, the Plaintiff suggests, he was fired as part of a cover-up of Shaw Environmental's possible involvement with a bribe of Prince Turki. [*See* Doc. 135-1 at 16-17.] The Court finds that the Plaintiff fails to create a genuine issue of material fact regarding this theory of pretext. First, the Plaintiff's theory that Shaw Environmental retaliated against him for reporting Prince Turki's financial interest or to cover-up Prince Turki's alleged financial interest is undercut by the fact that Jarrell reported the Plaintiff's statements to the Shaw Group's compliance officer, Kerry David, who undertook a due diligence investigation. [Doc. 96-7, Jarrell Dep. at 33-35, 38-40.] Moreover, in January 2008, Mike Kershaw, Senior Vice President and Chief Accounting Officer of the Shaw Group, also reported his concern that Prince Turki's alleged financial involvement in the joint venture could violate the FCPA. [Doc. 96-19, Kershaw Decl.; Doc. 96-20, Kershaw Meeting notes; Doc. 138-2, David Dep. at 10.] Shaw did not fire either Jarrell or Kershaw.

The Plaintiff attempts to create an issue of fact as to motive by describing a trip Shaw E&I executives took to Saudi Arabia in January 2008, and by alleging that "Shaw's investigation of Prince Turki's role in Shaw Arabia was a sham and a cover up." [Doc. 135-1 at 16.] However, none of these allegations are sufficient to create a genuine issue of material fact. "In order to survive a motion for summary judgment, the non-moving party must be able to show sufficient probative evidence that would permit a finding in his favor on more than mere speculation, conjecture, or fantasy." *Godfrey v. Pulitzer Pub. Co.*, 276, F.3d 405, 412 (8th Cir. 2002)(internal citations and

-22-

Case No. 1:09-cv-1405
Gwin, J.

alterations omitted), *quoted approvingly in* Lewis v. Plillip Morris Inc., 355 F.3d 515, 533 (6th Cir. 2004); *see also* Avery, 504 F. Supp. 2d at 258, n.9.   Moreover, in deciding a motion for summary judgment, a court must disregard hearsay and irrelevant evidence.  Godfredson, 173 F.3d at 374 (citing *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 189 (6th Cir. 1997).

     The Plaintiff offers no admissible, relevant evidence concerning the Shaw executives' trip to Saudi Arabia that creates a genuine issue of material fact regarding Shaw Environmental's motive for terminating the Plaintiff.   Moreover, the Plaintiff's allegation that Shaw's due diligence investigation was a "sham" or a "cover-up" is unsupported by the evidence.   Plaintiff suggests that Shaw failed to complete several of its due diligence objectives, including "determin[ing] whether Prince Turki had a propensity for unethical conduct." [Doc. 135-1 at 16.]  However, the exhibits the Plaintiff submits in support of its opposition brief do not support this claim.[11]  Moreover, the Plaintiff admits that David included language concerning other allegations of bribery involving Price Turki in her due diligence report. [*Id.* at 17.]

     As part of the due diligence investigation, Shaw received a sworn statement from Saad Al Matrafi, the senior Saudi partner of Shaw Arabia and the general manager of PAN, that no government official was an investor or owner in PAN. [Doc. 96-18; *see also* Doc. 96-7, Jarrell Dep. at 39-41.]  David also interviewed the Plaintiff as part of her due diligence investigation.  [Doc. 96-2, Kirk Dep. at 147-48.]  The due diligence investigation concluded that there was no evidence that Prince Turki was an owner or investor in PAN or Shaw Arabia.  [*Id.* at 41. 209-210, 229.]  The Plaintiff has presented no evidence that creates a genuine issue of material fact regarding whether the Defendant's stated justification for his discharge was its actual motive for terminating him.

---

[11]/The Plaintiff cites to two documents that were apparently exhibits to David's deposition, but did not submit these documents as exhibits to his summary judgment brief to the Court. [*See* Doc. 135-1 at 16.]

Case No. 1:09-cv-1405
Gwin, J.

Accordingly, the Plaintiff has failed to establish the overriding business justification prong of his wrongful termination claim.

Because Plaintiff Kirk fails to establish all four elements of his wrongful discharge in violation of public policy claim, the Court grants summary judgment in favor of the Defendant on this claim.

### C. Disability Discrimination Claims

Finally, Shaw Environmental argues that the Court should grant summary judgment in its favor on the Plaintiff's claims that the Defendant fired him because it regarded him as disabled, in violation of Ohio Revised Code §§ 4112.02 and 4112.99 and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, because these claims fail as a matter of law.

With respect to the Plaintiff's ADA claim, the Defendant argues that this Court does not have jurisdiction over the claim because the Plaintiff did not file a charge with the Equal Employment Opportunity Commission ("EEOC"). [Doc. 96-1 at 18-19.] The Plaintiff has not responded to the Defendant's arguments with respect to either of his disability discrimination claims. [*See* Docs. 131, 135-1.] Moreover, it is undisputed that the Plaintiff did not file a charge of discrimination with the EEOC before filing this suit. [*See* Doc. 96-2, Kirk Dep. at 204.] Accordingly, this Court grants the Defendant's motion to dismiss the Plaintiff's claim for disability discrimination under the ADA because in order for federal courts to have subject matter jurisdiction over ADA disability discrimination claims, the Plaintiff must have first unsuccessfully pursued administrative relief. *Jones v. Sumser Retirement Village, 209 F.3d 851, 853 (2000); Ang v. Procter & Gamble Co., 932 F.2d 540, 545* (citing *Love v. Pullman Co.*, 404 U.S. 522 (1972)).

Shaw Environmental also argues that the Court should grant summary judgment in its favor

Case No. 1:09-cv-1405
Gwin, J.

on Kirk's claim for disability discrimination under Ohio law because Kirk has failed to make out a *prima facie* case of disability discrimination. [Doc. 96-1 at 19.]

Because Ohio's disability discrimination law parallels the ADA in all relevant respects, this Court applies the same analytical framework, using cases and regulations interpreting the ADA as guidance. *Daugherty v. Sajar Plastics, Inc.*, 544 F.3d 696, 702 (6th Cir. 2008). In order to establish a *prima facie* case of disability discrimination under the ADA, a plaintiff must demonstrate that: (1) he or she is "disabled"; (2) he or she is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodation; (3) he or she suffered an adverse employment action; (4) the employer knew or had reason to know of his or her disability; and (5) either the position remained open or plaintiff was replaced. *Id.* at 703; *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173, 1185 (6th Cir. 1996).

The Defendant argues that the Plaintiff disavowed this claim during his deposition because he testified that he believed the sole reason Shaw Environmental terminated him was because of the information he knew about the Shaw Arabia joint venture. [Doc. 96-1; Doc. 96-2, Kirk Dep. at 118-19.] Shaw Environmental further argues that Kirk's claim fails because he has not established that he is "disabled" under Ohio law and because he cannot show that his employer knew or had reason to know of his disability. [Doc. 96-1 at 19-20.]

The Plaintiff also does not address his state-law disability claim in his response brief. Reviewing the evidence before it, the Court concludes that it is undisputed that the individual who terminated the Plaintiff, Malcolm Jarrell, had no knowledge of the Plaintiff's alleged disability at the time he made the decision to fire the Plaintiff. [Doc. 96-7, Jarrell Dep. at 117; Doc. 96-2, Kirk Dep. at 182, 229-230; *see also* Doc. 93-8, Jarrell Declaration.] Accordingly, the Plaintiff has failed

Case No. 1:09-cv-1405
Gwin, J.

to make out a *prima facie* case of disability discrimination under Ohio law, and the Court grants

summary judgment in the Defendant's favor on this claim.

### IV. Conclusion

For the foregoing reasons, the Court **GRANTS** the Defendant's motion for summary

judgment and dismisses all of the Plaintiff's claims against Shaw Environmental, with prejudice.

IT IS SO ORDERED.


Dated: May 25, 2010                        s/        *James S. Gwin*
                                           JAMES S. GWIN
                                           UNITED STATES DISTRICT JUDGE